STATE of Iowa, Appellee,

v.

William Frederick DAVIS, Appellant.

No. 67922.

Supreme Court of Iowa.

Dec. 22, 1982.

Francis C. Hoyt, Jr., Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Teresa Baustian, Asst. Atty. Gen., and William E. Davis, Scott County Atty., for appellee.

Considered by LeGRAND, P.J., and UHLENHOPP, HARRIS, McGIVERIN, and CARTER, JJ.

UHLENHOPP, Justice.

In this appeal we consider several legal problems in a prosecution for first-degree kidnapping and second-degree sexual abuse under sections 710.1, .2, 709.1, and .3 of the Iowa Code of 1979.

The jury could find the following from the evidence. A young woman returned to her apartment alone in Davenport, Iowa, at about 3:00 a.m. on October 4, 1980. She unlocked the garage door and drove in. As she got out of her car defendant William Frederick Davis put his arm around her neck from the rear, held a knife to her throat, and told her to get back into the car. She did so, and defendant got in and drove the car. Defendant had his trousers unzipped and lowered, and required the woman to keep her head down and have oral sex as he drove out of the garage. Defendant drove to a wooded area in Illinois, where he told the woman to remove her clothing. She complied, and defendant forced her to have sexual intercourse. She viewed defendant briefly on two occasions while in the car.

After the intercourse defendant told the woman to get out of the car before he hurt her. She was able to grab her sweater and pants, and she ran to the highway. Defendant left the car in a parking area near the woman's apartment.

The woman flagged down a truck and later received help from a law officer who took her to a hospital. She was unable to identify her assailant from mug shots but later did identify him from photographs, and she identified him in court. Two latent fingerprints on her car door were found to be those of defendant.

Illinois law officers later arrested defendant for an unrelated rape in that state, charged him, and placed him in jail there. Defendant obtained an attorney who spoke with him at the jail for about an hour. The attorney told defendant not to talk with the officers, and told the officers on duty he did not want defendant questioned.

The same evening an Illinois state's attorney authorized law officers to charge defendant with a rape in Illinois, which they did. They informed defendant of the additional charge, and he became distraught and stated he wanted to talk with someone. They asked if he wanted to talk with them, he said he did, and they took him to an interview room and gave him the Miranda warning.

The record contains a conflict of testimony regarding the conversation which is common in such cases. The officers testified to conduct which would lead to the conclusion that defendant knowingly and intelligently waived his rights and voluntarily related the circumstances of the Davenport incident and others; defendant testified to conduct which would lead to a contrary conclusion. For reasons which will appear, we find no necessity to resolve this conflict.

Defendant told the officers about five separate sex incidents, the fifth being the present one. He was allowed to speak with his wife after asking to do so. The conversation with the officers then resumed, this time with a tape recorder. The taped conversation was transcribed. The next day defendant read the transcription, made corrections to it, and signed each page of it.

The Scott County Attorney charged defendant with first-degree kidnapping, second-degree sexual abuse, and second-degree theft. The theft charge was subsequently dropped. Prior to trial defendant moved to suppress the statement he gave the officers; he asserted constitutional grounds which included involuntariness. During the hearing on the motion, the following transpired:

The Court: Your motion is self-explanatory. I think that the State's brief in resistance to that point correctly sets forth the applicable law concerning the custodial situation of the defendant and the right of the State to at that time procure fingerprints and other non-testimonial identification, and the motion to suppress the fingerprints or testimony in relation thereto is overruled. Now, it's also my understanding, Mr. Davis [prosecutor], that you do not intend to use the statement of the defendant in your case in chief, is that right?

Mr. Davis: That's correct, your Honor.

The Court: And only you would be using it for the purpose of impeachment in the event the defendant took the stand?

Mr. Davis: That's correct.

The Court: Well, quite apart from the position taken by the State, it is the Court's opinion that in reviewing the totality of the circumstances in this case, the defendant was apprised of his Fifth Amendment Miranda Rights on a continuing basis, did understand them, and there is no question in the Court's mind with respect to the voluntariness of the statement made at the time that it was taken. With respect to the defendant's Sixth Amendment right to counsel, which I believe you are also raising that, Mr. Feuerbach [defense attorney].

Mr. Feuerbach: Yes, Your Honor.

The Court: I think the burden is on the State to show that that is a right which is understood by the defendant and that he waived the same, and I think that is a high burden on the State. A review of the circumstances in this case would reveal that this was the fourth in a series of statements given by the defendant. In fact, they were given twice, once orally and once on tape with some interval between times. It is also the Court's understanding of the evidence that between the oral statement and the one that was taped, the defendant had an opportunity to speak with his wife. It is also noted that the defendant's attorney, Mr. Jamison, did pass on some information to certain police officers of the propriety of interrogating his client, but those were not the officers who were doing the interrogating in this instance. Each of the exhibits which have been submitted to the Court, the transcripts of the four statements taken, go to great lengths to demonstrate that the investigating officers, questioning officers, were quite aware that the defendant was represented by counsel and asked him about his representation and reminded him that he was represented by counsel, and at each instance, the defendant responded that it was his desire to talk with the police officers at that time. I think that factor and the other factors I've mentioned weigh heavily in favor of the State having sustained their burden to show that the waiver of his attorney at the time

that this statement was given was a voluntary waiver, and for each of those reasons, the motion to suppress the statement previously given is overruled. Is there anything else pending?

Mr. Feuerbach: No, there is no other motions pending.

The Court: All right. That's fine.

At the subsequent trial the State did not use defendant's statement in its case in chief. After the State rested and the trial court overruled defendant's motion for acquittal, the following occurred:

Mr. Feuerbach: Your Honor, at this time defense would like to make a record in regard to—decision has been made in this case regard to the defendant William Frederick Davis not testifying. I would state to the Court that the defendant and I have discussed the matter of whether or not he would testify in his own behalf in this trial and that the defendant is aware that it is his decision whether or not he chooses to testify. We have discussed this matter at various times during the preparation of this case. We have also discussed it earlier today. The defendant is aware of the Court's ruling in regard to the statements previously given by him, and the defendant is aware that if he would choose to testify, that the State would have the opportunity to use those statements for the purpose of impeaching any testimony that he would give, and for this reason and for other reasons that we have discussed, Mr. Davis chooses not to testify. Is that correct? We have discussed those matters?

The Defendant: Yes.

Mr. Feuerbach: And it is your choice now at this time not to testify in your own behalf?

The Defendant: Yes, it is.

Defense counsel renewed the motion for acquittal and the court overruled it. Defendant then rested as did the State. The statement was never used.

The jury found defendant guilty as charged. After sentencing, defendant appealed.

I. *Defendant's statement.* Defendant's first proposition in the appeal is that the district court erred in overruling his motion to suppress his statement. The determinative question here is whether defendant sustained prejudice and properly raised error.

■ The State did not use defendant's statement in its case in chief. Therefore defendant sustained no harm in that respect. The State could have used the statement for impeachment, however, if defendant had taken the stand and testified differently in material respects, but only if the statement was voluntarily given. *Mincey v. Arizona,* 437 U.S. 385, 397, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290, 303 (1978).

■ We will assume for purposes of this appeal the district court erred in its ruling on defendant's motion to suppress by finding that his statement was voluntary. If, after the State rested, (1) defendant had taken the stand and had testified differently from the statement in material respects, (2) the State had sought to use the statement to impeach defendant's testimony, (3) defendant had objected that the statement could not be so used because it was involuntary, (4) the court had overruled the objection, and (5) the State had used the statement to impeach, defendant would have demonstrated prejudice and raised error with respect to the court's ruling that the statement was voluntary. Under this record, defendant *might* have demonstrated prejudice and raised error if only (1) he had taken the stand and testified differently from the statement in material respects and (2) the State had used the statement to impeach his testimony—a question we do not decide, since this scenario did not occur. *Cf. State v. Harlow,* 325 N.W.2d 90 (Iowa 1982) (if unequivocal pretrial ruling made that testimony is admissible, no necessity exists to object when that testimony is introduced at trial).

Actually, defendant's attorney announced, with defendant's concurrence, that defendant would not take the stand because the court had ruled the statement was voluntary "and for other reasons that we have discussed. . . ." Defendant did not take the

stand and the statement was not used. By this scenario did defendant raise the alleged error and sustain prejudice?

The question brings into play the decision in *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). In that case the defendant did not take the stand, but the New Jersey Appellate Division, the highest New Jersey court that heard the case, considered the main question on its merits of whether the prior statements (before a grand jury) were voluntary. On certiorari, the United States Supreme Court first faced the question of whether the voluntariness issue was properly raised for the federal courts in view of Portash's failure to testify. It held the New Jersey appellate court "necessarily concluded that the federal constitutional question had been properly presented, because it ruled in Portash's favor on the merits." *Id.* at 455, 99 S.Ct. at 1295, 59 L.Ed.2d at 507. The Court further held that "nothing in federal law" prohibited New Jersey from following such a procedure. The Court therefore reached and decided the voluntariness issue. In so doing, however, the Court stated "federal law does not insist that New Jersey was wrong in not requiring Portash to take the witness stand in order to raise his constitutional claim." *Id.* at 456, 99 S.Ct. at 1295, 59 L.Ed.2d at 508.

Justices Powell and Rehnquist concurred in the Court's opinion in an opinion which included this:

> [New Jersey] insists that, because Portash did not take the witness stand, his immunized testimony was not used against him and he therefore cannot complain of a violation of his Fifth Amendment privilege. *The preferred method for raising claims such as Portash's would be for the defendant to take the stand and appeal a subsequent conviction, if—following a claim of immunity—the prosecutor were allowed to use immunized testimony for impeachment.* Only in this way may the claim be presented to a reviewing court in a concrete factual context. Moreover, requiring that the claim be presented only by those who have tak-

en the stand will prevent defendants with no real intention of testifying from creating artificial constitutional challenges to their convictions.

> This is a state case, however, in which the New Jersey Appellate Division apparently accepted the procedure followed by the trial court and treated the constitutional question as having been properly presented. I agree with the Court that this procedural question was within the authority of the state court to decide.

*Id.* at 463, 99 S.Ct. at 1298–99, 59 L.Ed.2d at 512 (emphasis added). Footnote 2 to this quotation stated:

> Accordingly, the Court need not, and, as I read its opinion, does not decide whether it would regard the constitutional issue as having been properly presented if this case had arisen in federal court.

Justice Blackman dissented, joined by Chief Justice Burger. He stated inter alia that Portash's failure to testify precluded presentation of the issue of involuntariness:

> [W]hen respondent failed to obtain a ruling he considered satisfactory, he refrained from testifying in his own behalf. Accordingly, he did not take the stand at the trial. He was not cross-examined. He gave no answer determined by the trial court to be materially inconsistent with any prior immunized statement on a relevant issue. The State did not seek to impeach him through use of immunized testimony. And the trial court did not rule that the State could do so in response to an inconsistent answer, or that the State could otherwise make use of immunized testimony at trial. In short, because of his failure to take the stand, respondent was never incriminated through the use of the testimony he previously had supplied under the immunity grant.

> . . . .

> [O]n this record, we cannot tell whether respondent would have taken the stand even had he obtained the ruling he sought from the trial court. The decision by a criminal defendant to testify is often the most important decision he faces in

the trial, and it seldom turns on the resolution of one factor among many. Even had respondent taken the stand, there is no assurance he would have given inconsistent answers to questions. Indeed, respondent vigorously has argued, in this Court and in the state courts, that he would not have testified, in any manner inconsistent with his immunized testimony. Moreover, even had inconsistent answers been given, the trial court would have had to determine whether the answers were offered in response to relevant and material questions before it would have permitted impeachment. And even then, there is no certainty that the State actually would have sought to use immunized materials to impeach respondent.

. . . .

I find this adjudication of an abstract dispute not only to be beyond the jurisdiction of the Court but to be unwise as well. At a minimum, as our Brother Powell notes, ante, at 462, 59 L.Ed.2d, at 512, a requirement that such a claim be adjudicated on appeal only when presented by a defendant who has taken the stand prevents a defendant from manufacturing constitutional challenges when he has no intention of taking the stand and testifying in his own behalf. More fundamentally, such disembodied decisionmaking removes disputes from the factual and often legal context that sharpens issues, highlights problem areas of special concern, and, above all, gives a reviewing court some notion of the practical reach of its pronouncements.

*Id.* at 464, 467, 468, 99 S.Ct. 1300, 1301–02, 59 L.Ed.2d at 513, 515–16.

Similar problems, although distinguishable for the most part, have arisen in a variety of contexts, including *United States v. Halbert,* 668 F.2d 489 (10th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 1989, 72 L.Ed.2d 453 (1982) (prior convictions held admissible); *United States v. Kiendra,* 663 F. 349 (1st Cir.1981) (same); *United States v. Pantone,* 634 F.2d 716 (3rd Cir.1980) (refers to *Portash* in note 14); *United States v. Cook,* 608 F.2d 1175 (9th Cir.1979), *cert.*

*denied,* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980) (prior convictions, several opinions discussing question); *United States v. Toney,* 615 F.2d 277 (5th Cir.), *cert. denied,* 449 U.S. 985, 101 S.Ct. 403, 66 L.Ed.2d 248 (1980); *United States v. Hickey,* 596 F.2d 1082 (1st Cir.), *cert. denied,* 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 70 (1979); (question of impeachment of statements elicited on the defendant's cross-examination as well as on direct examination); *United States v. Cobb,* 588 F.2d 607 (8th Cir.1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979) (advance ruling is tentative and dependent on the defendant's taking stand); *United States v. Johnston,* 543 F.2d 55 (8th Cir.1976) (prior convictions); *People v. Evans,* Colo.App. 630 P.2d 94 (1981) (trial court impermissibly ruled unconstitutional prior statement could be used for substantive as well as impeachment purposes); *Offutt v. State,* 44 Md. App. 670, 410 A.2d 611 (1980) (prior conviction—states can require that defendants take stand in order to raise the issue); *Haskins v. State,* 97 Wis.2d 408, 294 N.W.2d 25 (1980) (other crimes in a conspiracy).

 We agree with the interpretation of *Portash* which the court made in *Offutt v. State,* that the states possess authority to determine whether a defendant must, or need not, take the witness stand in order to demonstrate prejudice and raise constitutional issues of the present kind for appeal. Under the authority that a state possesses, we hold a defendant must take the stand and testify and the prosecutor must use the statement to impeach before the defendant can raise a constitutional claim such as we have here—that his prior statement could not be used for impeachment because it was involuntary.

Among our reasons for so holding are these. First, to hold otherwise would permit an accused to create an alleged error by merely announcing he would have taken the stand but for the trial court's prior finding that the statement was voluntary. Merely stating that he would have taken the stand is easy, but *would* the defendant have actually taken the stand had the prior ruling been the other way? Staying off the witness stand is one of the chief defense tactics

in any case. Actually taking the stand constitutes an acid test which transforms the hypothetical to the concrete. Moreover, defendants in criminal cases take the stand or do not take the stand for a variety of reasons. Here defense counsel candidly stated that defendant would not take the stand because of impeachment by the prior statement "and for other reasons that we have discussed...."

■ Second, a prosecutor cannot use a prior statement for impeachment unless the present testimony of the accused is inconsistent with it, and is inconsistent in material respects. *State v. Hilleshiem*, 305 N.W.2d 710, 713–14 (Iowa 1981). Can a court really know that a defendant *would* have testified at material variance to his prior statement until he actually does so? Defendant's typed statement was not pressed on him at the jail in a hurry; it was not presented to him until the next day. He read it, made corrections to it, and signed each page. The real reason for defendant's failure to testify may be that the statement is true.

Finally, even if defendant would have taken the stand and testified at material variance, how can we be sure that the State *would* have used the prior statement to impeach, even if the prosecutor early-on indicated his intention to do so? Prosecutors like defense counsel must continually make tactical decisions during the turns and twists of trial. A prosecutor's cross-examination without the statement, for example, may be sufficiently successful that he concludes his best tactic is to rest on that and thus obviate the necessity of persuading the appellate court that the statement was voluntary.

The best way to transform this problem from the theoretical to the actual is to require that a defendant actually testify in order to raise the constitutional issue and demonstrate prejudice. In some cases in which the defendant testifies a prior statement may not be used because of the defendant's testimony or the prosecutor's tactics, and the defendant will suffer no harm from the statement. In other cases the statement may be used to impeach defend-

ant as a witness, with substantial effect. In those cases the defendant can press his contention on appeal that the statement was involuntary, and if the appellate court so finds the defendant will have a new trial without use of the statement by the State.

■ We hold that the constitutional issue was not properly raised and prejudice was not shown.

■ II. *Change of venue.* Defendant argues that the district court erred in overruling his motion for change of venue. We have examined the record regarding this motion and hold that the court did not abuse its discretion in its ruling. *Murphy v. Florida*, 421 U.S. 794, 803, 95 S.Ct. 2031, 2038, 44 L.Ed.2d 589, 597 (1975); *State v. Johnson*, 318 N.W.2d 417, 422 (Iowa 1982); *State v. Love*, 302 N.W.2d 115, 122 (Iowa 1981).

■ III. *Identification.* Defendant contends that the State did not introduce substantial evidence identifying him as the assailant. The woman's in-court identification of defendant from her two brief observations of him at the scene, her photo identification, and the fingerprint evidence generated a jury question on identification under the test of sufficiency in *State v. Robinson*, 288 N.W.2d 337, 341 (Iowa 1980). The jury could have found that the State failed to carry its burden of proof of identification, or it could also find as it did that defendant was the man.

■ IV. *Double punishment.* The county attorney charged defendant generally in two counts with first-degree kidnapping based on sexual abuse and with second-degree sexual abuse. The charges, the trial, the instructions, and the verdicts correspond with those in the second case of *State v. Newman*, 326 N.W.2d 796 (Iowa 1982). When defendant was convicted of first-degree kidnapping, he could not also be convicted of sexual abuse because that crime was an element of the kidnapping and was therefore an included offense. The case falls squarely under section 701.9 of the Iowa Code:

No person shall be convicted of a public offense which is necessarily included in another public offense of which the per-

son is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Section 814.20 of the Code authorizes us, after examination of the entire record, to reduce the punishment, but we cannot increase it. Under this authority we nullify the judgment and sentence for sexual abuse.

■ V. *Assistance of counsel.* Defendant argues, finally, that his trial counsel did not perform within the range of normal competency. The record is insufficient to permit us to pass upon this proposition, *State v. O'Connell*, 275 N.W.2d 197, 206 (Iowa 1979), and defendant may present it by postconviction proceedings if he chooses.

We uphold the kidnapping conviction without prejudice to postconviction proceedings on the issue of assistance of counsel in district court, but nullify the sexual abuse conviction.

MODIFIED AND AFFIRMED.