**STATE of Iowa, Plaintiff–Appellee,**

v.

**Virgil Norman KNAPP,
Defendant–Appellant.**

No. 87–394.

Court of Appeals of Iowa.

April 20, 1988.

Charles L. Harrington, Chief Appellate Defender, and Michael J. Laughlin, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Mark J. Zbieroski, Asst. Atty. Gen., and Steven M. Foritano, Asst. Co. Atty., for plaintiff-appellee.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

In this appeal we consider several legal problems in this prosecution for theft in the second degree under sections 714.1(4) and 714.2(2) of the Iowa Code. For reasons which will appear, we affirm.

The jury could find the following from the evidence. In the spring and summer months of 1986, the Des Moines Police Department used a cleaning business as a front while undercover officers, posing as fences, let it be known that they were willing to purchase stolen property. During the course of this "sting" operation, the defendant was introduced to an undercover policeman by his neighbor, Dennis VanArkel. Mr. VanArkel had on previous occasions sold stolen property to undercover agents.

On August 29, 1986, an undercover agent purchased stolen tools from the defendant. The owner of the tools identified them and told the police that he did not give defendant permission to take them. Based on this information, the defendant was charged with theft in the second degree.

The defendant was but one of fifty or sixty other persons apprehended in this sting operation. In all, there were about 140 separate purchasing transactions.

Police reports were prepared for each transaction. Each report carried a different number. The defendant's individual case report was labeled as "Transaction 113."

Because of the number of cases and as a matter of convenience for all concerned, both parties to this action agreed to waive the filing of minutes of testimony and in lieu thereof the defendant's police report 113 was to be substituted.

Defendant's trial counsel and his office represented about one-half of the persons involved in the sting operation. Defense counsel received from the State a large stack of files, with each file containing a ten to fifteen-page police report concerning that particular sting transaction. Transmitted with the files was an index which referred to each case by number and identified the file number of each police report. The defendant's police report, identified as Transaction 113, was included.

Prior to the selection of the jury, defense counsel learned that the State intended to call a witness to give testimony concerning case report numbers 23 and 32. After receiving this information, defense counsel in chambers made the following record:

> Both police reports indicate a Mr. Van-Arkel had some dealings with the Do-Rite Cleaners, the police sting business, and during those transactions he said he had borrowed his neighbor's truck to bring the things down there, his neighbor being Virgil Knapp.
>
> Since I referred only to the police reports that involved Transaction 113, until Mr. Foritano [assistant county attorney] pointed it out today, I did not have notice of those transactions, and for that reason under *State v. Walker* and *State v. Olson*, which required the State to give a defendant a full and fair disclosure of the evidence against him, I am moving this court to enter an order in limine that those transactions, 23 and 32, involving Dennis VanArkel, not be introduced as

evidence in this proceeding because of lack of notice.

It is clear to us that the sole thrust of the defendant's motion rested on the ground of lack of notice. Phrased another way, defendant's claim amounted to a charge that Transactions 23 and 32 were outside the scope of the minutes of testimony.

It is equally clear to us that the testimony which the State intended to elicit from police reports 23 and 32 was not contained in police report 113. With this as its background, the court determined that the State failed to give a full and fair statement of the witness's expected testimony as required under Iowa Rule of Criminal Procedure 5(3) and ruled:

> The court determines and rules that the motion in limine is sustained to the extent that the State will be limited to presenting testimony consistent with what information is set forth in Transaction 113, same being considered by the court as a substitute for the minutes of testimony that would ordinarily be attached to a county attorney's information. . . .

In compliance with this ruling, the State did not use information contained in Transactions 23 and 32. However, after the prosecution rested its case and the trial court overruled defendant's motion for acquittal, another hearing was held to decide whether the State would be permitted to inquire into case reports 23 and 32 in the event the defendant took the stand and claimed he had no knowledge of the stolen character of the property in question. The defendant again objected on the grounds that the criminal activity of VanArkel was not probative as to defendant's knowledge and thus was immaterial.

The State did not intend to use these reports as evidence of VanArkel selling property to the police. What the State intended to show by such testimony was that if defendant took the witness stand and denied that he knew the property he sold was stolen, the State would establish by Transactions 23 and 32 that the defendant was in possession of property which

had been stolen from two or more persons on separate occasions. The result the State intended to achieve was that the previous possession of stolen property by the defendant would give rise to the inference that the defendant had knowledge that the property in question was stolen.

The court ruled that the State could inquire as to the contents of Transactions 23 and 32 in the event the defendant took the witness stand and testified that he had no knowledge that the property in question was stolen. The defendant did not take the witness stand. Nonetheless, the defendant claims that the trial court committed prejudicial error.

## I.

The defendant first contends that Iowa Rule of Evidence 404(b) prevents the State from using the two police reports to cross-examine the defendant. At the outset the State counters that the defendant did not preserve this issue for appeal. Specifically, the State argues (1) that the trial court did not make, and counsel did not request, a ruling that the police reports were evidence of other alleged crimes or wrongdoing prohibited by Iowa Rule of Evidence 404(b) and (2) the defendant's only objection was that the police reports were not materially related to defendant's knowledge. We note that since other alleged crimes or wrongdoing can be used to prove knowledge pursuant to Iowa Rule of Evidence 404(b), we will treat these issues as though they were adequately preserved for appeal. Our scope of review on this matter is on error.

Iowa Rule of Evidence 404(b) expressly provides that evidence of other crimes, wrongs or acts can be admissible as proof of knowledge. In applying rule 404(b), the court determines whether the challenged evidence is relevant and material to a legitimate issue other than a general propensity to commit wrongful acts. *State v. Barrett*, 401 N.W.2d 184, 187 (Iowa 1987). Where the challenged evidence is relevant to a legitimate issue, the prior act becomes relevant and admissible in the face of the general rule against introducing prior crimes.

*State v. Mendiola*, 360 N.W.2d 780, 782 (Iowa 1985).

Nevertheless, even where such evidence is relevant, the trial court must still balance the probative value of the evidence against its potential prejudice. *State v. Roth*, 403 N.W.2d 762, 765 (Iowa 1987). The Iowa Supreme Court has announced that it will reverse a trial court's determination on the issue of admissibility only when it finds a clear abuse of discretion. *Id.* at 765; *State v. Kern*, 392 N.W.2d 134, 136 (Iowa 1986). "For this court to hold that the trial court abused its discretion, the complaining party must show that the trial court's action was unreasonable in the light of attendant circumstances." *State v. Cott*, 283 N.W.2d 324, 329 (Iowa 1979) (cites and quotes omitted).

In this case, the two police reports which the defendant seeks to preclude testimony from are relevant to the issue of knowledge. Defendant's knowledge regarding the stolen character of the property is an element of the crime charged and is crucial to the State's case. *Id.* ("Usually a defendant's knowledge regarding the activity that makes up a criminal charge is crucial to the State's case.") Defendant was charged with theft as defined under Iowa Code section 714.1(4) (1985). Under that section the State was required to prove beyond a reasonable doubt that defendant knew such property was stolen, or had reasonable cause to believe that such property had been stolen. Iowa Code § 714.1(4) (1985).

In this case, the likelihood that defendant had knowledge of the stolen nature of the property increased with the number of other times that defendant had possession of stolen property. *See State v. Thomas*, 275 N.W.2d 211, 215 (Iowa 1979) (likelihood of knowledge of the forged nature of the check increased with the number of checks of a similar nature). The record shows the State planned to inquire as to prior acts to show defendant's knowledge in this case. Moreover, Iowa Code section 714.1(4) expressly permits an inference of knowledge where the State presents evidence of prior activity indicating possession of property on separate occasions. Iowa Code

§ 714.1(4) (1985) (the fact that the person is found in possession of property which has been stolen from two or more persons on separate occasions ... shall be evidence from which the court or jury may infer that the person knew or believed that the property had been stolen.).

Although there is always a possibility that such evidence may tend to show that the defendant is a bad person, if the State had inquired as to the prior incidents of theft as contained in the two police reports, the trial court could have provided the jury with a limiting instruction explaining the purposes for which the transactions were to be considered. *State v. Leto*, 305 N.W. 2d 482, 491 (Iowa 1981). There is no evidence in the record indicating the trial court abused its discretion in concluding that the probative value of the two police reports outweighed their prejudicial effect.

The defendant has not shown that the trial court's action was unreasonable in the light of attendant circumstances. *State v. Cott*, 283 N.W.2d at 329. Accordingly, we affirm the trial court's decision.

## II.

There is one other reason, and perhaps more important, why the defendant was not prejudiced by the court's ruling. Before discussing this reason, we note that along with claiming error under rule 404(b) defendant also claims that the trial court's ruling that would have permitted the State to cross-examine him as to his possession of other stolen property had he taken the witness stand effectively precluded him from exercising his constitutional right to take the witness stand and testify in his own behalf.

▮ The defendant's constitutional challenge is without merit. As the supreme court held in *State v. Davis*, 328 N.W.2d 301 (Iowa 1982), the defendant must first take the stand and "actually testify in order to raise the constitutional issue and demonstrate prejudice."

The defendant in *State v. Davis* gave a statement admitting the crime for which he was charged. *Id.* Prior to trial, the defendant moved to suppress the statement; he asserted constitutional grounds which included involuntariness. *Id.* The trial court overruled the suppression motion. *Id.*

At the subsequent trial, the state did not use defendant's statement in its case-in-chief. *Id.* After the state rested and the trial court overruled defendant's motion for acquittal, the defendant announced that he would not take the witness stand. *Id.* One of the reasons advanced was:

> The defendant is aware of the court's ruling in regard to the statements previously given by him, and the defendant is aware that if he would choose to testify, that the state would have the opportunity to use those statements for the purpose of impeaching any testimony he would give. . . .

*Id.* at 304. The defendant was found guilty as charged and was sentenced. The defendant appealed, alleging the trial court erred in overruling his suppression motion. The supreme court in *Davis* held:

> [A] defendant must take the stand and testify and the prosecutor must use the statement to impeach before the defendant can raise a constitutional claim such as we have here that his prior statement could not be used for impeachment because it was involuntary.

*Id.* at 306.

> The court in *State v. Davis*, reasoned: First, to hold otherwise would permit an accused to create an alleged error by merely announcing he would have taken the stand but for the trial court's prior finding. . . . Merely stating that he would have taken the stand is easy, but would the defendant have actually taken the stand had the prior ruling been the other way? Staying off the witness stand is one of the chief defense tactics in any case. Actually taking the stand constitutes an acid test which transforms the hypothetical to the concrete. Moreover, defendants in criminal cases take the stand or do not take the stand for a variety of reasons. . . .
>
> Second, a prosecutor cannot use a prior statement for impeachment unless the

present testimony of the accused is inconsistent with it, and is inconsistent in material respects. Can a court really know that a defendant would have testified at material variance to his prior statement until he actually does so?.... Finally, even if defendant would have taken the stand and testified at material variance, how can we be sure that the state would have used the prior statement to impeach, even if the prosecutor early-on indicated his intention to do so? Prosecutors like defense counsel must continually make tactical decisions during the turns and twists of trial. A prosecutor's cross-examination without the statement, for example, may be sufficiently successful that he concludes his best tactic is to rest on that and thus obviate a necessity of persuading the appellate court that the statement was [admissible].

*Id.* at 306–07.

From the record before us it is difficult to tell whether the defendant intended to testify, whether the ruling of the trial judge motivated the defendant not to testify, whether defendant would have taken the stand even had he obtained the ruling he sought from the trial court; and if defendant had testified, whether he would have denied knowledge of the stolen character of the property, whether defendant would have testified in material variance of the prior incidents, and whether the State would have changed its position and not used Transactions 23 and 32.

Under the circumstances here, we hold that a defendant must take the stand and testify and the prosecutor must proceed with cross-examination as to defendant's possession of other stolen property before the defendant can raise a constitutional claim such as the one expressed in this case. Until the defendant does take the witness stand and testify, we are dealing only with a hypothetical and theoretical circumstance. As the court stated in *State v. Davis:* "The best way to transform this problem [impeachment issue] from the theoretical to the actual is to require that a defendant actually testify in order to raise

the constitutional issue and demonstrate prejudice." *State v. Davis,* 328 N.W.2d at 307.

The United States Supreme Court resolved a somewhat similar problem in *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979) There the defendant did not take the stand. Justices Powell and Rehnquist in a concurring opinion stated:

The preferred method of raising claims such as *Portash's* would be for the defendant to take the stand and appeal a subsequent conviction, if—following a claim of immunity—the prosecutor were allowed to use immunized testimony for impeachment. Only in this way may the claim be presented to a reviewing court in a concrete factual context. Moreover, requiring that the claim be presented only by those who have taken the stand will prevent defendant with no real intention of testifying from creating artificial constitutional challenges to their convictions.

*Id.* at 463, 99 S.Ct. at 1298–99, 59 L.Ed.2d at 512.

We hold that the constitutional issue was not properly raised and prejudice was not shown.

### III.

■ The next issue for consideration is whether the State presented sufficient evidence to prove a necessary element of the crime charged, that being the defendant in fact, had knowledge or believed that the property in question was stolen. Section 714.1(4) states in pertinent part:

A person commits theft when the person does any of the following:

\*    \*    \*    \*    \*    \*

4. Exercises control over stolen property, knowing such property to have been stolen, or having reasonable cause to believe that such property has been stolen, unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate public officer. The fact that the person is found in possession of property which has been stolen from two or more persons on separate

occasions, or that the person is a dealer or other person familiar with the value of such property and has acquired it for a consideration which is far below its reasonable value, shall be evidence from which the court or jury may infer that the person knew or believed that the property had been stolen.

Iowa Code § 714.1(4) (1987).

The evidence shows that Kenneth Ward Bennett discovered that his garage was broken into and his tools were missing on August 17, 1986. His insurance company paid him $2,400 for the replacement value of those tools. On or about August 28, 1986, an undercover agent involved in the above-mentioned "sting operation," went to defendant's home and purchased some tools. The defendant sold the tools to the undercover agent for $200. Kenneth Ward Bennett positively identified those tools as the ones taken from his garage. He then testified that he had not given the defendant permission or authority to possess, sell, or exercise control over any of his tools. Defendant's possession of the tools was never explained.

Thus, there is sufficient evidence permitting the court or a jury to infer that the defendant knew of the stolen character of the property. Knowledge can be inferred either from defendant's unexplained possession of recently-stolen tools or from the fact that these tools were sold for $200, a substantially lower price when compared to the $2,400 replacement value. *See* Iowa Code § 714.3 (1985); *State v. Scott*, 405 N.W.2d 829, 832–33 (Iowa 1987). Accordingly, we find that the State presented sufficient evidence enabling a court or jury to conclude beyond a reasonable doubt that the defendant committed second-degree theft.

There being no error in the admission of evidence, and there being sufficient evidence to support the jury verdict, the judgment is affirmed.

AFFIRMED.