# IN THE COURT OF APPEALS OF IOWA

No. 16-0518
Filed September 13, 2017

**JEREL LAMAR WRIGHT,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

Appeal from the denial of an application for postconviction relief filed pursuant to Iowa Code chapter 822 (2013). **AFFIRMED.**

Travis M. Armbrust of Brown, Kinsey, Funkhouser & Lander, P.L.C., Mason City, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee State.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Jerel Wright was convicted of attempted murder and voluntary manslaughter for the stabbing of Derrick Tye and the stabbing and death of Jermaris Lorez West. In *State v. Wright* (*Wright*), No. 10-1330, 2011 WL 2041578, at *1 (Iowa Ct. App. May 25, 2011), this court affirmed Wright's convictions on direct appeal and preserved for postconviction-relief proceedings certain claims of ineffective assistance of counsel. In *Wright v. State* (*Wright II*), No. 12-2101, 2014 WL 636150, at *1 (Iowa Ct. App. Feb. 19, 2014), this court affirmed the denial of Wright's application for postconviction relief. In this case, Wright appeals the denial of his second application for postconviction relief. Wright claims his trial counsel provided constitutionally deficient representation in four respects. Our review is de novo. *See State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016).

I.

Some of the relevant facts and circumstances surrounding the offense are set forth in our prior opinions. *See Wright II*, 2014 WL 636150, at *1; *Wright*, 2011 WL 2041578, at *1.

> On or about September 7, 2009, Wright was involved in a street fight. Two of the participants were stabbed. De[r]rick Tye was hospitalized as a result of his injuries. Jermaris Lorez West died as a result of the injuries he sustained. Wright was immediately arrested and taken into custody. Wright initially exercised his right to remain silent in response to law enforcement efforts to interrogate him. He was permitted to call his mother, and she told him to tell the officers what he had done. He responded accordingly and admitted stabbing Tye and indicated he had tried to kill him but did not admit to stabbing West. Wright was charged with the attempted murder of Tye and the second-degree murder of West. His statements were admitted into evidence at trial.

While Wright was incarcerated in the Dubuque County Jail he was visited by Sister Rosanna Gleason, acting as a chaplain or chaplain's assistant to the residents of the jail. Wright wrote a letter in which he admitted stabbing Tye and put it in an envelope which he gave to a jailer for delivery to Sister Gleason. The letter did not admit that he stabbed West. The letter was opened by the jail staff and admitted into evidence at trial.

Neither Wright's admissions to the interrogators nor his letter to his assistant chaplain were challenged by a motion to suppress, and both were admitted at trial without objection. Wright and his counsel had determined that he would testify. The evidence was overwhelming that he had stabbed Tye and substantial that he had stabbed West. The blade of the knife recovered at the scene had blood with DNA matching both Tye and West. Wright was found guilty of attempted murder as charged and voluntary manslaughter instead of murder in the second degree.

*Wright II*, 2014 WL 636150, at *1.

The event precipitating the street fight occurred the evening before the street fight. That evening, Wright had sexual intercourse with a woman who was pregnant with Tye's child and who was the mother of Tye's children. At some point after Wright had intercourse with the mother of Tye's children, Tye arrived at the home where Wright was. Tye was accompanied by Shelby Redmond, De'Andre Murphy, Deonte Howard, and Jermaris West. Tye confronted Wright, and a fight ensued. Tye and two of the other men beat up Wright, striking him with their fists, a six-pack of soda cans, a flower pot, and a fire extinguisher. West intervened and broke up the fight. Wright left the home and went to a nearby park. Wright testified his lip had a hole in it, his nose was bleeding, and he had lumps and knots in his face from the fight.

The following day, Wright and Tye, personally and through intermediaries, communicated with each other by telephone. Depending on whose testimony is credited, Tye made threats against Wright or Wright made threats against Tye.

Other persons attempted to resolve the situation before things got out of hand. Later the same day, Wright and his brother Joseph, along with several other individuals, were driving in a friend's car and they came across Tye and several other persons outside a residence. Joseph stopped the car, and everyone in the car exited the vehicle. After some talking and posturing between the two groups, Wright got into a fight with Shelby Redmond. The fight ended when an older gentleman, known in the neighborhood as "Unc," intervened and attempted to break up the fight. West hit the man and knocked him out. Wright and his associates left the scene in their vehicle.

The fight at issue in this case occurred not much later the same day. Wright gave one account of the fight. After regrouping at Wright's house, Wright testified he and his friends decided to walk back to the scene of the previous fight to check on Unc. When they arrived at the scene, Unc was being placed into an ambulance. Police were at the scene. Wright did not speak with the police. Instead, he, his brother, and their friends decided to go to Romaine Wheeler's house. They set out on foot and began jogging. Wright testified six or seven men started following them. When Wright and his associates turned a corner, they saw a car with West and other individuals in it. Wright testified he believed a fight was going to occur. Wright and his brother Joseph ran toward the men exiting the car and started fighting with them. Wright testified "twenty people" were involved in the fight. Wright testified he did not have a knife at the time the fight started. He denied stabbing West. Wright testified he saw Derrick Wheeler stab West. At some point during the fight, Wright testified, he saw the knife on the ground, picked it up, and stabbed Derrick Tye. Wright testified he "snapped

back," realized what he had done, and backed away. At that point, Romaine Wheeler kicked him in the back, which caused Wright to drop the knife on the ground. Wright testified he then ran. He was arrested a few blocks away.

The State's witnesses gave a very different version of events. The fight at issue occurred in front of the home of Erica Palmer. She testified she saw a commotion outside and called the police. She saw LaShaun Runnels and Wright arguing. She saw Joseph and Derrick Wheeler "swinging on top of" Tye. Later, Palmer saw her sister retrieve a broken knife outside the home and set it on the porch.

LaShaun Runnels, the owner of the vehicle from which the men were exiting, testified Wright's group ran at the car and started fighting with her car's occupants as soon as they exited the car. She testified she saw several men fighting with West and she unsuccessfully tried to pull several men off him. According to Runnels, Wright threatened to stab her with a knife he was wielding. He swung the knife at her, but she backed away. She testified both Wrights had knives—Jerel's like a steak knife and Joseph's a little larger. Runnels testified she witnessed Wright stab Tye in the back. Then the Wrights and at least one other individual, Fred Moore, jumped on top of Tye. Runnels believed Moore may have had a knife. Wheeler and another individual pulled the Wrights off of Tye. The Wrights and Wheeler then ran off.

Shelby Redmond was one of the occupants of the vehicle. He testified when he exited the car in front of Palmer's house, Wheeler grabbed his neck. Wright ran up to Redmond and "tried to poke" him with a knife. Redmond testified Wright did not injure him with the knife but only managed to rip his shirt.

Redmond testified he saw the Wrights approach West with knives but did not see them stab West. He testified he only saw the Wrights "exchanging blows" with West. Redmond went into Palmer's house to retrieve a liquor bottle to use as a weapon. When Redmond emerged from the home with a bottle, the fight was over. He briefly chased the Wrights but dropped the bottle and ran when he saw the police arriving at the scene.

Derrick Tye testified he saw Jerel Wright running toward Runnels' car with a knife. Tye exited the vehicle on the opposite side to avoid Wright. Tye fell down after exiting the vehicle. At that point, he was aware of Joseph Wright, if not others, hitting him. He did not see Jerel Wright. He testified he heard Wheeler ask Jerel Wright what he was doing with the knife. Tye testified he did not know he was stabbed, but he "probably figured [he] was when they [said] he had a knife." He was able to make it to safety in Palmer's house after the fight broke up. He then realized he was bleeding.

Romaine Wheeler testified he was with the Wrights when they started running at the car parked in front of Palmer's house. Wheeler ran after Joseph to stop him, but he was unable to do so. Wheeler testified he observed Runnels and Joseph fighting. Wheeler observed Wright with "a silver object in his hand." Wheeler later saw Wright stab Tye. Wheeler testified he pulled Wright off Tye and then the Wrights ran away. At that point, Redmond came running out of Palmer's house with a bottle. Wheeler was aware Redmond was coming for him, so Wheeler ran away.

Deonte Howard testified he saw the Wrights run up to West and swing at him. He saw West run off but did not see him again. Howard saw Wright with a

knife in his hand run toward Runnels. Howard testified he then saw Tye crossing the street with Wright chasing him. Tye fell, and Wright jumped on top of Tye. Howard testified Joseph then came over to help Wright, but Wheeler had grabbed Wright and taken the knife from him. Howard saw Romaine ask Wright what he was doing, and Howard saw Tye with a large gash in his head. Howard saw no one else with a knife besides Wright. Howard testified there were "people everywhere" during this incident but the two he recognized were the Wrights.

Police officers and medical personnel arrived at the scene. They found West alive at the scene. He was transported to the hospital for treatment but died at the hospital. Tye was still present at the scene and received medical treatment. He had been stabbed in the head. Officers obtained a search warrant to search the vehicle Wright had been using that day. Officers found a long piece of wood in the back seat and a knife in the glove compartment of the vehicle.

## II.

To establish his claims of ineffective assistance of counsel, Wright was required to prove by a preponderance of the evidence that his trial counsel's performance was so deficient that it constituted a breach of an essential duty and the breach of duty resulted in prejudice to him. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at

700; *see also State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) ("A defendant's inability to prove either element is fatal.").

With respect to the first element, Wright was required to prove counsel's performance fell below the standard of a reasonably competent attorney. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). In assessing counsel's performance, we presume counsel acted competently. *See State v. Horness*, 600 N.W.2d 294, 298 (Iowa 1999). The presumption of competency can be overcome if trial counsel's performance "fell below the normal range" of competent performance. *Id.*

To establish prejudice, the applicant must prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. It is not enough to show the breach had only some effect on the outcome, as nearly any act or omission by counsel results in some change to the outcome one way or another, but not necessarily in a way that would undermine its reliability. *See id.* at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A.

Wright first contends his trial counsel was ineffective in failing to file a motion to suppress the statements Wright made to police officers. Specifically, after speaking with his mother, who encouraged Wright to speak with the police,

Wright told police officers that he "tried to kill that motherfucker," referring to Tye, and that he "could give two fucks about" anyone else at the crime scene.

We conclude Wright has waived this claim. Wright argues only that his trial counsel should have moved to suppress the statements. Wright makes no argument regarding the substantive basis for the motion to suppress. He makes no argument the trial court would have granted the motion to suppress had it been made. He cites no authority in support of his argument. "[W]e will not speculate on the arguments [the appellant] might have made and then search for legal authority and comb the record for facts to support such arguments." *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996). The argument is thus waived. *See* Iowa R. App. P. 6.903(2)(g)(3) (providing the failure to cite authority in support of an issue may be deemed waiver of the issue).

Even assuming Wright had not waived this claim, the claim would fail. In the prior appeal, we concluded counsel did not breach an essential duty in failing to move to suppress the statements at issue. There was little reason to believe Wright had a valid motion to suppress. In addition, counsel made a strategic reason not to move to suppress the statements because Wright was going to testify at trial and the statements would have been admitted regardless. As stated in our prior opinion:

> There was scant evidence that Wright's statement to law enforcement was the result of coercion. Counsel for Wright was well aware that if he testified he would be subject to cross-examination and his statements to the interrogators would most likely be a basis for impeachment if he denied their content. *See State v. Davis*, 328 N.W.2d 301, 303 (Iowa 1982). Statements made in violation of *Miranda* rights are admissible for impeachment if the trustworthiness of the statements satisfies legal standards. *Mincey v. Arizona*, 437 U.S. 385, 397–98 (1978).

In summary, trial counsel in concert with Wright made a conscious decision for him to testify, understanding the interrogation would be admitted, in the hope that the conviction for second-degree murder would be avoided. To the extent that Wright was only convicted of voluntary manslaughter, counsel's strategy was not improvident, but instead was successful.

*Wright II*, 2014 WL 636150, at *2.

## B.

In his next claim of error, Wright contends his trial counsel failed to adequately prepare him to testify. Wright's vague allegation that trial counsel did not adequately prepare him for trial is not sufficient to overcome the presumption his counsel acted competently in preparing him for trial. *See Horness*, 600 N.W.2d at 297. "Claiming counsel should have done a better job is not enough; specific ways in which counsel was inadequate are required." *Runyan v. State*, No. 03-1775, 2005 WL 1629956, at *3 (Iowa Ct. App. July 13, 2005).

In any event, there is no evidence counsel failed to prepare Wright to testify. The record reflects trial counsel met with Wright on at least six separate occasions when depositions of witnesses were taken. In addition, trial counsel and Wright met on other occasions to prepare for trial. Trial counsel testified her trial preparation practice was not to practice responses to specific questions but instead to prepare the witness generally for trial. She testified she went over the framework of Wright's testimony with him, informing him of the general topics they were going to cover and the sequence in which the topics would be covered.

We also conclude Wright failed to establish he suffered any prejudice. He does not contend he was unprepared to answer any specific question or questions. He does not contend his testimony would have been substantively

different. Instead, he contends he would have seemed more confident and trustworthy to the jury. This is mere speculation and insufficient to establish constitutional prejudice. *See Thomas v. State*, No. 14-0818, 2015 WL 4481692, at *2 (Iowa Ct. App. July 22, 2015) (holding the defendant failed to prove ineffective assistance of counsel claim where the defendant made only a generalized claim his counsel should have done more to prepare the defendant to testify); *Runyan*, 2005 WL 1629956, at *3 (holding the defendant failed to establish prejudice "resulting from lack of preparation for his testimony").

C.

Wright contends his counsel did not do enough to impeach witness Romaine Wheeler. A police report documenting an interview with Wheeler states, "Wheeler stated that he seen a knife during the fight but claimed not to know who had it." The report also stated Wheeler told police "another subject" "accidentally cut" him but Wheeler claimed not to know who the subject was. At trial, Wheeler identified Wright as the person with the knife. Trial counsel did not impeach Wheeler using the police report.

We conclude the district court did not err in denying this claim for relief. Wright takes the statements out of context. When viewed as a whole, the police report had limited impeachment value. According to the police report, Wheeler stated he pulled Wright off Tye while they were fighting. Wheeler also stated Tye stated "he stabbed me" at the same time Wheeler observed Wright to be punching Tye. In short, the statements made to the police largely corroborated testimony that Wright had a knife and stabbed Tye. In addition, in light of the strength of the other evidence, including multiple eyewitnesses that testified to

substantially the same version of events as Wheeler, Wright has not established prejudice. *See, e.g., Brewer v. State*, No. 15-0144, 2016 WL 5930329, at *2 n.2 (Iowa Ct. App. Oct. 12, 2016) (holding the defendant failed to establish prejudice from failure to impeach State's witness where there was strong evidence of guilt); *Reynolds v. State*, No. 08-1764, 2010 WL 1050172, at *2 (Iowa Ct. App. Mar. 24, 2010) (holding the defendant suffered no prejudice where trial counsel failed to impeach a witness on a collateral matter); *Weaver v. State*, No. 04-0870, 2005 WL 600228, at *5 (Iowa Ct. App. Mar. 16, 2005) (holding no prejudice for failure to impeach witness).

Wright also makes a similar claim regarding the failure to impeach Tye's testimony. The challenged testimony related to a discrepancy in Tye's testimony on a collateral matter. On de novo review, we conclude the claim is wholly without merit.

## D.

In his last claim of error, Wright contends his counsel provided ineffective assistance in failing to request a justification instruction. Specifically, his counsel should have requested an instruction that Wright's action was justified in defense of his brother. It should be noted that Wright's claim relates only to the conviction for attempted murder of Tye. Wright wholly denied he stabbed West.

"Justification as a defense is two-pronged: an admission that a proscribed act was done, and the establishment of an exculpatory excuse that takes the act out of the criminal law." *State v. Jeffries*, 313 N.W.2d 508, 509 (Iowa 1981). The defense is codified at Iowa Code section 704.3: "A person is justified in the use of reasonable force when the person reasonably believes that such force is

necessary to defend oneself or another from any imminent use of unlawful force."

"[T]he test of justification is both subjective and objective. The actor must actually believe that [another] is in danger and that belief must be a reasonable one." *State v. Frei*, 831 N.W.2d 70, 74 (Iowa 2013) (quoting *State v. Elam*, 328 N.W.2d 314, 317 (Iowa 1982)).

Justification is an affirmative defense. *See State v. Delay*, 320 N.W.2d 831, 834 (Iowa 1982). The defendant bears the burden of demonstrating that the record contains sufficient evidence to support an instruction on this issue. *See State v. Lawler*, 571 N.W.2d 486, 489 (Iowa 1997). The district court is obligated to instruct the jury on that defense if substantial evidence exists to support it. *See State v. Rains*, 574 N.W.2d 904, 915 (Iowa 1998); *State v. Dunson*, 433 N.W.2d 676, 677 (Iowa 1988) ("Substantial evidence in the record from any source justifies submission of a self-defense instruction. If there is such substantial evidence, the district court has a duty to give a requested instruction on the defense." (citation omitted)). Once the instruction is given, the burden shifts to the State to disprove the justification defense beyond a reasonable doubt. *See Delay*, 320 N.W.2d at 834. Where the record "does not contain substantial evidence of self-defense the trial court is not obligated to instruct the jury on justification." *Id.*

To prevail on his constitutional claim, Wright must prove his trial counsel "performed below the standard demanded of a reasonably competent attorney." *Ledezma*, 626 N.W.2d at 142. We scrutinize the "claim in light of the totality of the circumstances." *Id.* "[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of

diligence as opposed to the exercise of judgment." *Id.* "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Id.* at 143.

Under the totality of the circumstances, we conclude Wright failed to establish his trial counsel's conduct fell below the standard demanded of a reasonably competent attorney. Wright's trial counsel was an experienced practitioner in criminal law. She served as an assistant county attorney from 1992 through 2004. In 2004, she obtained a position as a public defender, handling felonies, including murder, willful injury, and felonies involving guns. This case was tried in 2010. Wright's trial counsel testified she would not have requested an instruction where she believed there was not evidence at trial supporting the instruction or where requesting the instruction would weaken her client's case. She testified "the entire record would not be sufficient to support an instruction" in this case. In addition, counsel testified she had made a decision to argue Wright had no intent to kill Tye. She wanted "to let the jury see a young man who . . . was in a situation of where there were a lot of things that people could have done on impulse without thinking about them at all." Counsel's judgment was based on her trial preparation, which included numerous depositions, the use of an investigator, and meetings with Wright. "[S]trategic decisions made after 'thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Ledezma*, 626 N.W.2d at 143 (citation omitted). Such is the case here.

This is not one of the rare cases in which counsel's strategic decision can be said to be so poor that it fell "outside the broad scope of a reasonably

competent attorney." *Id.* This is not a strong case for the justification defense.

First, it is largely undisputed Wright and his brother initiated the attack on the men exiting the vehicle. The defense of justification is only available, with some exceptions not relevant here, where the defendant did not initiate the violence. *See Dunson*, 433 N.W.2d at 679 (discussing the withdrawal exception); *State v. Badgett*, 167 N.W.2d 680, 683 (Iowa 1969) (stating the aggressor is not entitled to the defense).

Second, there is also evidence an alternative course of action was available to Wright. *See State v. O'Shea*, 634 N.W.2d 150, 157 (Iowa 2001) (stating the State may disprove the defense of justification where the defendant had an alternate course of action). For example, Wright and his associates could have continued to run. Wright testified he had his cellular phone on his person. He could have called the police for help. According to Wright's testimony, only a few moments before this fight started, the police were several blocks away investigating the fight resulting in injury to Unc.

Third, and most important, Wright did not testify he stabbed Tye for the purpose of coming to the defense of Joseph from attacks by Tye. He testified:

> Q. What did you do with the knife? A. I stabbed Derrick [Tye].
>
> Q. Why? A. I mean, when I made it across the street, I saw my brother on the bottom of the crowd. So at first, I came over swinging with my fists. Nothing in hand. And then I was hit, knocked to the ground, and I spotted the knife. I picked it up. He wasn't—it wasn't no intentional target, you know? I just swing it and he got hit.

In reviewing Wright's testimony, it is not even clear Tye was in the group of people allegedly attacking Joseph. Wright testified he saw his brother on the

bottom of a crowd. Even if one were to infer from this statement that Joseph was being attacked by "the crowd," Wright never identified Tye as one of the persons in the crowd attacking Joseph. Wright merely testified Tye was in a group of people fighting near some wood chips near his brother. He testified, "It was, like, twenty people fighting over there. It was just chaos."

At best, Wright's testimony established he was moving toward his brother, he was knocked to the ground, he found a knife, he indiscriminately swung the knife, and, in so doing, he unintentionally stabbed Tye, who was among a group of twenty people fighting in an area near where his brother was also fighting. "[W]hen an individual testifies that they did not intend to cause harm, such testimony prevents the individual from claiming self-defense." *State v. Hubbard*, No. 11AP-945, 2013 WL 3341171, at *14 (Ohio Ct. App. June 27, 2013); *see also People v. Parsons*, No. 328430, 2016 WL 6780706, at *3 (Mich. Ct. App. Nov. 15, 2016) (holding defendant's statement she accidentally stabbed the victim negated her claim of self-defense).

We cannot conclude counsel's strategic decision to not request a justification instruction under the circumstances was so outside the bounds of competency that it can be deemed constitutionally deficient representation. The claim of justification was weak based on the record evidence. *See State v. Ridenour*, No. 00-0709, 2001 WL 803674, at *2 (Iowa Ct. App. July 18, 2001) ("The record in the present case does not contain substantial evidence to generate a jury issue on self-defense. Ridenour's own testimony was devoid of suggestion that he believed force was necessary to protect himself. Instead, he stated that upon hearing Porter behind him he swung at him 'without thinking.'").

Counsel made a decision to forego the defense and present an alternate argument. We must not "assume the role of Monday morning quarterback in condemning counsel's judgment in choosing between what are frequently equally hazardous options available to [her]." *Anfinson v. State*, 758 N.W.2d 496, 501 (Iowa 2008). "The real issue is not whether defense counsel's actions were successful, but whether they were 'justifiable.'" *Id.* (citation omitted). Here, they were.

III.

For the foregoing reasons, we conclude the district court did not err in denying each of Wright's claims for postconviction relief. We also conclude Wright is not entitled to relief under a cumulative-error analysis. *See State v. Clay*, 824 N.W.2d 488, 501–02 (Iowa 2012). We affirm the judgment of the district court.

**AFFIRMED.**