STATE of Iowa, Appellee,

v.

Charles Raymond BAIR, Appellant,

STATE of Iowa, Appellee,

v.

Leslie Richard KRUSE, Appellant.

Nos. 83–875, 83–943.

Supreme Court of Iowa.

Feb. 13, 1985.

Thomas J. Miller, Atty. Gen., Rebecca Claypool, Asst. Atty. Gen., and Stephen J. Petersen, Co. Atty., for appellee.

Charles L. Harrington, Appellate Defender, and LuAnn White, Asst. Appellate Defender, for appellants.

**HARRIS, Justice.**

The two defendants were jointly charged on identical two-count informations. They were then jointly tried and each convicted of two separate robberies that occurred on the same evening. They do not complain of being charged together. *See State v. Snodgrass,* 346 N.W.2d 472, 475 (Iowa 1984). Rather they complain that the two robberies should have been the subject of separate trials. We agree with their contentions, reverse their convictions, and remand for new trials.

Kruse and Bair, the defendants, patronized a number of Muscatine taverns on the night of February 2, 1983. Three of the taverns figure prominently in the two charges. Early in the evening they were in one known as Edward's where Kruse played pool with Edwin McCallister. McCallister was the victim in the first robbery. Between 8:00 and 8:30 p.m. the three men, with three women they met there, left for Herky's, another tavern.

They rode in a car furnished by Cynthia Davis, one of the three women. Soon after their arrival McCallister decided he preferred Edward's to Herky's and asked to return. His enthusiasm for Herky's was considerably dulled because the free beer offered there that night had all been consumed. Davis loaned the car to Bair and Kruse so they could give McCallister a ride. The car stalled on the way to Edward's.

Although the evidence is in dispute from this point we take it from the verdict that McCallister was then robbed by Kruse and Bair who hit him with their fists to get his money. McCallister did not report the robbery to the police.

After the men left the stalled car Kruse and Bair walked to a third tavern called the Southside. The second count involved the robbery of the Southside. Kruse said his father often patronized the Southside so they went there to see if his father could help them start the car. Only Kruse entered and he found the bartender was the only one there. He picked up a package of matches and left.

Although the two testified Kruse then went home and Bair went to a fourth tavern, the jury found otherwise. Thirty-five to forty minutes after their first visit there,

Bair returned and robbed the Southside. The bartender thought he had a gun. There was evidence which linked Kruse to the Southside robbery. Earlier, when Kruse picked up the matches, the bartender saw someone she thought was Bair looking in the window. When the tavern was robbed Bair entered from the rear entrance. A police investigator later found two sets of footprints leading away from a point near that entrance.

Later Bair and Kruse returned to Herky's and met Cynthia Davis, the woman who had furnished the stalled car. They arranged transportation to the car and found it would start. The two then persuaded Davis to drive to Fort Madison.

On the trip she saw Bair take cash from his coat pocket, count it, and give some to Kruse. She asked the two if they had robbed McCallister, which they denied. Bair said they had robbed a tavern and described the details of that robbery to her.

I. Iowa rule of criminal procedure 6(1), providing for charging multiple offenses, has been recently amended. *See* Report of the Supreme Court, 1983 Iowa Acts Ch. 218. The amendment liberalizes and broadens charging practices so as to allow prosecutors more leeway in seeking to join multiple offenses for a single prosecution. The State argues the amendment to be a mere clarification of the intent of the older rule. We however think the rule has been substantially changed.

■ In its report to us, suggesting the change, our advisory committee on criminal rules stated their desire "to have rule 6 on charging multiple offenses more consistent with the approach of Federal Rule of Criminal Procedure 8." The report then justified its recommendation by stating that "more liberal charging practices would lead to speedier indictments and judicial economy ... of time ... and paper...." We conclude that the recent amendment, effective after this joint trial was had, has no effect on the question presented.

We are bound by the wording of the rule prior to its amendment. The rule then stated:

*Multiple Offenses.* When the conduct of a defendant may establish the commission of more than one public offense arising out of the same transaction or occurrence, the defendant may be prosecuted for each of such offenses. Each of such offenses may be alleged and prosecuted as separate counts within a single complaint, information or indictment, unless for good cause shown, the trial court in its discretion determines otherwise.

■ Under this rule, distinct counts may be consolidated for trial where they arise "out of the same transaction or occurrence;" even so, the trial court, in its discretion, and for good cause shown, may order the counts to be tried separately. *Id.* The trial court is to order severance where the defendant shows his or her "interest in receiving a fair trial uninfluenced by the prejudicial effects which could result from a joint trial [are] outweighed [by] the State's interest in judicial economy." *State v. Trudo,* 253 N.W.2d 101, 104 (Iowa 1977).

We have not previously been called upon to interpret rule 6(1) but note that similar language in an Oregon statute has been considered by the Oregon court.

In *State v. Fitzgerald,* 267 Or. 266, 516 P.2d 1280 (1973) the defendant was charged in two counts with escape from custody and unauthorized use of a vehicle. Over his objection the counts were jointly tried and on appeal he claimed error because the counts were not severed. The Oregon court had to determine whether the two separate counts were embraced by its joinder statute which allowed consolidation of counts where they arose out of "the same act or transaction." The court stated:

We hold that the two charges arise out of the same act or transaction if they are so clearly linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge.

*Id.,* 516 P.2d at 1284. *Cf. State v. Cunha,* 193 N.W.2d 106, 112 (Iowa 1972). (Evidence of various crimes is admissible to show a common scheme "embracing the commission of two or more crimes so related to each other that proof of one tends to prove the other.")

▇ Later, in *State v. Boyd,* 271 Or. 558, 533 P.2d 795 (1975), the Oregon court expanded on the *Fitzgerald* language, stating:

> In deciding whether multiple charges should be joined, the prosecutor and the trial judge may start, then, with the initial guideline that if a complete account of one charge necessarily includes details of the other charge, the charges must be joined to avoid a later double jeopardy defense to further prosecution. We construe this test of interrelated events as necessitating joinder only where the facts of each charge can be explained adequately only by drawing upon the facts of the other charge.

*Id.,* 533 P.2d at 799. We are persuaded by the reasonableness of the *Fitzgerald* and *Boyd* tests, and adopt them for our applicable rule 6(1).

▇ The test focuses in three ways on how the crimes are linked together: time, place, and the circumstances. Joinder must occur where "the facts of each charge can be explained adequately only by drawing upon the facts of the other charge." *Boyd,* 533 P.2d at 799.

▇ The two robberies charged here were somewhat closely linked in time. They occurred within about an hour and one-half of one another. While some multiple crimes occur within a matter of minutes, or even simultaneously, the time frame here is no impediment to a joint trial.

▇ The two robberies are relatively less closely linked in terms of their place. One occurred next to a stalled automobile; the other occurred within easy walking distance from there. The linkage of place militates somewhat against jointly trying the two counts.

The next question is whether the events of the evening, common to both crimes,

were a mere background to separate robberies or are so closely related to both offenses that it could be said the two offenses were conditioned upon or determined by each other. These events, the movement from bar to bar, the procurement of the automobile, and the trip to Fort Madison, are interrelated and might qualify as a "common scheme or plan" under rule 6(1) as later amended. But it is another thing to say these events rendered the two crimes a "same transaction or occurrence" under the applicable rule.

The McCallister robbery involved the two defendants roughing up a lone man near a car and getting his money. There was no allegation any type of weapon was used. The tavern incident involved one man, supposedly Bair, holding up a bartender. The bartender testified the robber appeared to have a gun. There is some evidence that Kruse was nearby at the time of the robbery but he was not inside the tavern at the time. Except for the fact the two robberies occurred in the same evening, by the same men, there is no suggestion of any additional relationship between the two crimes. There is nothing to indicate that they were conditioned upon or determined by one another.

Either of the crimes could have been proven even with the entire omission of any reference to the other. Factual background common to both would have to be related in both trials but the test turns, not upon factual background, but upon the crimes themselves. Trial here should have been severed and the trial court abused its discretion in not so ordering.

The decision of the trial court is reversed and the case is remanded for new, separate trials.

DECISION OF COURT OF APPEALS VACATED; REVERSED AND REMANDED.

All Justices concur except CARTER, McGIVERIN and SCHULTZ, JJ., who dissent.

CARTER, Justice (dissenting).

I dissent. Noticeably absent from the decision of the court is any discussion of

how the misjoinder found to exist in the present case prejudiced the defendants.

As the majority tacitly concedes, the record would support a finding that the two offenses grew out of a "common scheme or plan." In order for this court to propose the amendment to rule 6(1), which now permits joint indictment and trial with respect to separate offenses growing out of a "common scheme or plan," it must have been persuaded that this procedure is not inherently unfair. I concur in that analysis and suggest that, as a result, defendants in the present appeal have only succeeded in showing a procedural irregularity, insufficient to justify reversal.

Ironically, because the joinder rule is a matter of procedure, the amendment to rule 6(1), which occurred after defendants' trial, will apparently be applicable for purposes of retrial. The purpose of reversal is to permit a retrial of the case free from the error upon which the reversal is based. Where, as here, it is problematic that this purpose can be achieved, I believe we should affirm the judgment in spite of the procedural irregularity.

McGIVERIN and SCHULTZ, JJ., join this dissent.