STATE of Iowa, Appellee,

v.

Carl Edward GEIER, Appellant.

No. 91–237.

Supreme Court of Iowa.

April 15, 1992.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., and Paul M. Goldsmith, County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

SNELL, Justice.

Appellant, Carl Edward Geier, appeals the judgment and sentence entered upon his convictions for Going Armed with Intent, Assault with Intent to Commit Sexual Abuse, Indecent Exposure, and Theft in the Third Degree, in violation of Iowa Code sections 708.8, 709.11, 709.9, and 714.1(4) (1989), respectively. Geier contends that the district court erred in finding that a stun gun is a "dangerous weapon" for purposes of the offense, going armed with intent, and in failing to sever the theft counts from the remaining charges in the trial information. We conclude that the district court's decision with respect to these two matters was sound and, therefore, affirm.

The evidence relevant to the two issues before us is undisputed. On the morning of May 5, 1990, the victim, T.M., was walking her two dogs on a wooded nature trail near Highway 34 in Chariton, Iowa. As she approached the portion of the trail which led under the highway overpass, she noticed a car parked near the bridge and a man walking along a nearby stream. The man began walking toward T.M. causing

her to become nervous and to remove a pen knife from a pouch on her belt. As she began to turn around to return home, the man, later identified as Geier, began jogging toward her.

T.M. indicated that as she turned around to face Geier, he reached into the pocket of his jacket and retrieved a stun gun. She responded by displaying her knife and asked Geier what he wanted. T.M. testified that Geier responded by asking her what she was "doing out there." She instructed Geier to leave her alone, but he ignored her request and began walking toward her. As she backed away, T.M. released the smaller of her two dogs. The smaller dog jumped at Geier and began to bark. Geier responded by pointing the stun gun at the dog and generated a clicking noise, which caused the dog to retreat.

T.M. testified that Geier then "opened his trousers across his hips," and exposed his genitals. She then brandished her pen knife and proceeded to back away, but Geier continued to walk toward her. According to T.M., Geier, without explanation, then became quiet, fastened his pants, and walked past her to the car that was parked near the overpass. After passing T.M., however, Geier turned around and proceeded to again approach her with his pants open and his genitals exposed.

T.M. testified that Geier then directed the stun gun at her, which made a clicking sound as it came in contact with her upper arm. However, apparently because she was wearing a specially treated Army jacket at the time, T.M. indicated that she did not experience any incapacitation or pain from the incident. As Geier was discharging the stun gun on T.M.'s arm, she "swung around with [her] knife and stabbed him in the shoulder"; T.M. stated that she then fled to the highway to summon help.

A passing motorist, Allen Sellers, testified that he came upon T.M. on the highway and stopped to assist her. Sellers indicated that T.M. was hysterical but managed to recount the details of her attack, including the fact that she believed that a green Pontiac Grand Prix parked near the overpass belonged to her assailant. Sellers wrote down the license plate of the vehicle, which was later found to be registered to Geier. After directing T.M. to stay at a nearby restaurant with her dogs, Sellers drove to the "Law Center" and summoned officers to the scene.

After obtaining a description from T.M. of her assailant and his vehicle, police officers detained a motorist matching the description driving east on Highway 34. The driver of the vehicle was the appellant, Geier, whom T.M. later identified as her assailant. Geier was then arrested.

Deputy Herbert Muir testified that at the time of Geier's arrest, he was wearing a jacket with a small hole in the shoulder area and that the zipper of Geier's pants was open. Deputy Muir also indicated that a stun gun was found inside Geier's car.

After Geier's arrest, Deputy Roy Brereton noticed a large boat motor and trolling motor in the back seat of Geier's vehicle. Deputy Brereton also observed several tools, including a pair of cutting pliers, screwdriver, and regular pliers on the floor of Geier's car. After obtaining a search warrant, a thorough search of Geier's car was conducted. The officers discovered that the two motors in Geier's vehicle matched the description of two motors that had been reported stolen the previous night.

As a consequence of the foregoing events, Geier was charged with the multiple offenses stated. At trial, James Quistorff testified that he was the owner of the Mercury boat motor and trolling motor found by Deputy Brereton. Quistorff indicated that he was attempting to sell the motors and had them padlocked to a boat in his front yard. Quistorff stated that the chain securing the motors had been cut and that the motors were missing as of May 4, 1990. At the time of trial, Quistorff had sold the trolling motor for thirty-five dollars; the larger motor had not been sold but Quistorff had received an offer of $450 for it.

After considering the testimony related above, the court, ruling from the bench, found Geier guilty of assault with intent to

commit sexual abuse (Count I), theft in the third degree (Count II), going armed with intent (Count III), and indecent exposure (Count V). Geier was committed to the custody of the Director of the Iowa Department of Corrections for a term of imprisonment not to exceed two years on count one, two years on count two, five years on count three, and one year on count five; the district court ordered that the sentences for the misdemeanor offenses of assault, theft, and indecent exposure run consecutively, with the sentence for the felony conviction of going armed with intent to run concurrently.

Geier challenges his convictions on two grounds. First, he argues that the district court improperly found the stun gun to be a "dangerous weapon" for purposes of the going-armed-with-intent conviction. Secondly, Geier maintains that the district court improperly refused to sever the theft count from the remaining charges in violation of Iowa Rule of Criminal Procedure 6(1).

## I. *The Stun Gun as a Dangerous Weapon.*

Iowa Code section 708.8, which defines the crime of going armed with intent, provides as follows:

A person who *goes armed with any dangerous weapon* with the intent to use without justification such weapon against the person of another commits a class "D" felony.

Iowa Code § 708.8 (1991) (emphasis added). A dangerous weapon is defined in Iowa Code section 702.7 as follows:

A "dangerous weapon" is any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed. Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a hu-

man being, is a dangerous weapon. Dangerous weapons include, but are not limited to, any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, switchblade knife, or knife having a blade exceeding five inches in length.

Iowa Code § 702.7 (1991).

Geier contends that the district court did not have before it sufficient evidence to support a finding that a stun gun is a "dangerous weapon," as defined in Iowa Code section 702.7, and claims to have preserved this asserted error by way of his motion for judgment of acquittal made at the close of the State's case in chief. However, the motion for acquittal made no reference to any evidentiary insufficiency concerning the stun gun or its characterization as a "dangerous weapon." In fact, Geier did not raise the issue presently before us until after the trial had concluded, at which time the argument presented herein was raised in the context of a new-trial motion.

We note that as a general matter, "[t]he grounds of a motion for new trial must stand or fall on exceptions taken at trial and a party cannot in a post verdict motion amplify or add new grounds as a basis for relief." *State v. Droste*, 232 N.W.2d 483, 488 (Iowa 1975); Dunahoo and Thomas, *Preservation of Error and Making the Record in the Iowa Criminal Trial and Appellate Processes*, 36 Drake L.Rev. 45, 84 (1986–87). However, we need not rest our resolution of this issue on the principles of error preservation insofar as we conclude that Geier's argument fails on the merits.

A motion for judgment of acquittal is to be granted whenever "the evidence is insufficient to sustain a conviction" for the charged offense. Iowa R.Crim.P. 18(8)(a). As a reviewing court, we view the evidence in the light most favorable to the prosecution and will draw any reasonable inferences therefrom necessary to support the conviction. *State v. Dallen*, 452 N.W.2d 398, 399 (Iowa 1990); *State v. White*, 223 N.W.2d 163, 164 (Iowa 1974). To successfully resist a motion for acquittal, the State must have presented "such evidence as

could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. . . . It is sufficient to raise a fair inference of guilt as to each essential element of the crime although the evidence must do more than raise suspicion, speculation or conjecture." *State v. LaPointe*, 418 N.W.2d 49, 51 (Iowa 1988); *see also State v. Davis*, 229 N.W.2d 249, 251 (Iowa 1975).

As noted above, Iowa Code section 702.7 includes among its definitions of a dangerous weapon the following: "[a] dangerous weapon is any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal and which is capable of inflicting death upon a human being when used in the manner for which it was designed."

In *State v. McKee*, 312 N.W.2d 907 (Iowa 1981), we were called upon to decide what was meant by the phrase "bodily injury" which is included in the "serious injury" definition of Iowa Code section 702.18. We said:

> Bodily injury ordinarily "refers only to injury to the body, or to sickness or disease contracted by the injured as a result of injury." *Black's Law Dictionary* 159. Injury includes "an act that damages, harms, or hurts: an unjust or undeserved infliction of suffering or harm . . . hurt, damage, or loss sustained. . . ." *Webster's Third New International Dictionary* 1164 (1976). Thus the ordinary dictionary definition of bodily injury coincides with the Model Penal Code definition of the term. Because the Model Penal Code definition fits the context of section 702.18, we adopt it.

The Model Penal Code defines bodily injury as "physical pain, illness or any impairment of physical condition." *McKee*, 312 N.W.2d at 913 (citing Model Penal Code commentary § 210.0(2)); *see also State v. Luppes*, 358 N.W.2d 322, 325 (Iowa App.1984) (adopting the *McKee* definition of "bodily injury" for purposes of Iowa Code section 708.2(2), the penalty provision for simple assault). We now conclude that the term "injury upon a human being" in section 702.7 is synonymous with the term "bodily

injury"; accordingly, the *McKee* definition of "bodily injury" is to be used in construing the term "injury" as that term is used in section 702.7. *See* Iowa Code § 702.1 (1991) ("whenever a term, word or phrase is defined in the criminal code, such a meaning shall be given wherever it appears in the Code, unless it is being specially defined for a special purpose.").

Deputy Muir testified that the stun gun uses a nine volt battery to create an arc of electricity that ranges from 30,000 volts up to 65,000 volts thereby imparting a shock to the recipient. Clearly, a shock resulting from an electric charge that may range as high as 65,000 volts is a "device designed primarily for use in inflicting . . . injury," which is described by the Model Penal Code as "physical pain . . . or an impairment of physical condition." *See also State v. Manning*, 224 N.W.2d 232, 236 (Iowa 1974) ("Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved."). Deputy Muir also indicated that the stun gun is capable of causing death if used in the head or neck region. Deputy Muir's testimony exceeds the threshold necessary to sustain the court's finding that a stun gun is a "dangerous weapon" as that term is defined in section 702.7.

Finally, we would note that many courts as well as legislatures have deemed it appropriate to characterize stun guns as dangerous or deadly weapons. *See, e.g., United States v. Wallace*, 800 F.2d 1509, 1513 (9th Cir.1986), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1901, 95 L.Ed.2d 507 (1987) (finding stun gun to be a "dangerous weapon" for purposes of a federal airline violation, where "dangerous weapon" was statutorily defined as a weapon "likely to produce death or great bodily harm"); *State v. Evans*, 247 Mont. 218, 806 P.2d 512, 516–17 (1991) (concluding that jury properly found a stun gun to be a weapon, where weapon was statutorily defined to be "any instru-

ment, article or substance which, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury"); *People v. MacCary*, 570 N.Y.S.2d 322, 323, 173 A.D.2d 646, 647 (App.1991) (concluding that the prosecution adduced sufficient evidence upon which a jury could reasonably conclude that a stun gun is a "dangerous instrument," where "dangerous instrument" was statutorily defined as "any instrument ... which, under the circumstances in which it is used ... is readily capable of causing death or other serious physical injury"); Ill.Rev.Stat. Ch. 38, ¶ 24–1(a)(2) (1985) (making possession of a stun gun "or any other dangerous or deadly weapon" with the intent to use it unlawfully against another a criminal offense); Mich.Comp.Laws § 750.224(a) (1991) (making sale or possession of a stun gun a felony); N.C.Gen.Stat. § 14–269(a) (1986) (making it a misdemeanor to carry a concealed stun gun "or other dangerous weapon"); N.D.Cent.Code § 62.1–01–01(1) (1985) (defining stun gun as a "dangerous weapon").

We conclude that there was sufficient evidence adduced at trial to convince a rational trier of fact that a stun gun is a "dangerous weapon" under the aforementioned statutory definition. Accordingly, the district court correctly denied Geier's motion for acquittal.

## II. *Severance of the Theft Count from the Remaining Counts.*

In Geier's second asserted error, he argues that the district court erred in failing to sever the two theft counts from the remaining charges, all of which related to the assault on T.M. Iowa Rule of Criminal Procedure 6(1) is the relevant court rule:

> **MULTIPLE OFFENSES.** Two or more public offenses which arose from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan may be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise.

Geier's complaint arises out of his pretrial motion for severance alleging that joinder of the charges against him would produce "substantial prejudice" and deny him a fair trial before a single jury. The district court ruled "that it would be burdensome upon the judiciary to sever the five charges in this matter all arising as a charge against one defendant and apparently arising out of one event" and therefore denied the motion to sever. Before presentation of evidence, Geier waived his right to a jury trial and proceeded to trial before the bench. We review this issue on an abuse of discretion standard. *State v. Bair*, 362 N.W.2d 509, 512 (Iowa 1985).

Geier's argument is one of negative implication: since rule 6(1) permits the joinder of counts where they arise out of the same transaction or occurrence or are part of a common scheme or plan, the rule prohibits joinder where the offenses are neither part of a common scheme nor part of the same transaction or occurrence. As an initial matter, we note that the counts involving the assault on T.M. and the counts involving the theft of the boat motors did not arise out of the same transaction or occurrence as those terms are used in Iowa Rule of Criminal Procedure 6(1). *Bair*, 362 N.W.2d at 512 ("same transaction or occurrence" necessitates unity of time, place, and circumstances resulting in situation wherein "the facts of each charge can be explained adequately only by drawing upon the facts of the other charge"). Similarly, the theft counts and the assault counts cannot be said to constitute part of a "common scheme or plan." *State v. Wright*, 191 N.W.2d 638, 641 (Iowa 1971) (noting that a "common scheme or plan" requires some connection between the crimes aside from the fact they are similar and committed by the same person).

As a general rule, when the counts neither arise out of the same transaction or occurrence nor are part of a common scheme or plan, separate trials would be called for under Iowa Rule of Criminal Procedure 6(1). However, in a benchtrial case, as here, there is less likelihood that a

failure to sever has prejudiced the defendant than in a trial to a jury. By virtue of training and experience, the court is better able to compartmentalize the evidence regarding the various charges and guard against the prejudice a severance seeks to prevent. Consistent with the concerns of Iowa Rule of Criminal Procedure 6(1), a trial of multiple charges must strike the proper balance between the antipodal themes of ensuring defendant a fair trial and preserving judicial efficiency. *Cf. State v. Brown*, 397 N.W.2d 689, 695–96 (Iowa 1986) (accused challenging denial of motion to sever defendants must show that jury could not compartmentalize evidence).

■ Geier first argues that he was deterred from testifying on the assault charge because the charge of theft involved a crime of truth and veracity. He claims that combining the charges substantially diminished his credibility and prejudiced his defense to the assault charge to the point that he dared not testify. We find this unsupported contention to be wholly without merit. We accept the State's suggestion as more plausible: that Geier wished to avoid being impeached by the introduction of his voluminous prior theft convictions. Geier's assertion of prejudice is without support.

In a similar argument, Geier maintains that he was prejudiced in his defense against the theft charges by the joinder of evidence relating to the assault on T.M. His claim here is that the election not to testify regarding the assault prevented him from explaining why he was in possession of the motors he was charged with stealing. *Cf. State v. Knapp*, 426 N.W.2d 169, 175 (Iowa App.1988) (knowledge of stolen character of property may be inferred from defendant's unexplained possession of recently stolen items). This linkage of charges thus prevented his defense to the theft charge and denied him a fair trial.

■ We believe that the prejudice, if any, that defendant claims as a result of his not testifying came from his decision, which was made for reasons of his own, independent of Iowa Rule of Criminal Procedure 6(1) on multiple offenses. Geier elected not to testify, as was his right. Had he testified, the State would have been entitled to impeach his testimony with his numerous prior convictions involving truth or veracity. Iowa R.Evid. 609(a). We conclude that Geier made this choice because of his prior convictions rather than as a consequence of any purported prejudice from trying the various counts jointly. *Cf. State v. Davis*, 328 N.W.2d 301, 304–07 (Iowa 1982) (defendant, who did not actually testify, may not raise claim of prejudice arising from a decision not to testify purportedly based on fear that State would then use inadmissible testimony to impeach); *Knapp*, 426 N.W.2d at 173–74.

Geier's further complaint on this point is that the mere fact of including the evidence of assault prejudiced his defense to the theft charge because of its indication of bad character. However, there is nothing here but a bare suggestion of prejudice that might occur from a court's failure to compartmentalize the various counts. We find no proof to support this allegation and deem it meritless.

Having found no substantiation for Geier's claims of prejudice, we conclude that the district court did not err in refusing to sever the theft counts from the remaining counts. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.