# IN THE COURT OF APPEALS OF IOWA

No. 14-1425
Filed August 19, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**EDRIX ROMILUS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mary E. Howes (motion to sever) and Stewart P. Werling (trial), Judges.

A defendant appeals his convictions, alleging the district court should have granted his motion to sever and his motion for mistrial. **AFFIRMED.**

Murray W. Bell of Murray W. Bell, P.C., Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Alexandra Link, Assistant Attorney General, Michael J. Walton, County Attorney, and Melissa Zaehringer, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, J.**

Edrix Romilus appeals his judgment and sentences for two counts of second-degree sexual abuse, one count of third-degree sexual abuse, and three counts of lascivious acts with a child. He contends the district court (A) abused its discretion in denying his motion to sever the counts relating to one child from the counts relating to another and (B) should have granted his motion for mistrial based on an expert's comments about one of the complaining witnesses.

## I.    *Background Facts and Proceedings*

In an eleven-count trial information, the State charged Edrix Romilus with committing sexual acts on three children, S.P., S.R., and R.R. Romilus moved to sever the counts pertaining to each child. The district court granted the motion with respect to R.R. The district court dismissed one count involving this child, and the jury acquitted Romilus of the remaining two counts.

The district court denied the motion to sever with respect to S.P, and S.R. The State filed an amended trial information charging Romilus with one count of second-degree sexual abuse and one count of lascivious acts with S.P., and one count of second-degree sexual abuse, one count of third-degree sexual abuse, and two counts of lascivious acts with S.R. The case went to trial twice, with the first trial resulting in a mistrial and the second resulting in findings of guilt on each of the counts. Romilus appealed.

## II.   Analysis

### A.   Severance

Romilus contends the district court should have severed the trials involving S.P. and S.R.  The State counters that Romilus failed to preserve error because he did not renew his motion to sever during the second trial.

The Iowa Supreme Court has stated a mistrial returns the parties to their original positions.  *See Harden v. Ill. Cent. R.R. Co.*, 118 N.W.2d 76, 77 (Iowa 1962).  The implication, then, is that any previously-filed motions must be refiled.  However, the State has cited no precedent holding a motion to sever filed in one trial must be re-asserted following a mistrial.  In the absence of controlling law on this question, we decline to rest our opinion on error preservation grounds.  Proceeding to the merits, we review the district court's ruling for an abuse of discretion.  *See State v. Geier*, 484 N.W.2d 167, 172 (Iowa 1992).

Iowa Rule of Criminal Procedure 2.6(1) states two or more indictable public offenses arising from the same transaction or occurrence or which are part of a common scheme or plan, shall be charged together "unless, for good cause shown, the trial court in its discretion determines otherwise."  Romilus contends there was no "common scheme or plan."

> [T]ransactions or occurrences are part of a common scheme or plan under Iowa Rule of Criminal Procedure 2.6(1) when they are the products of a single or continuing motive.  In ascertaining whether a common scheme or plan exists, we have found it helpful to consider factors such as intent, modus operandi, and the temporal and geographic proximity of the crimes.

*State v. Elston*, 735 N.W.2d 196, 198-99 (Iowa 2007) (citations and internal quotation marks omitted).

The district court found the temporal and geographic proximity of the crimes to be the salient factors:

> All the acts allegedly occurred within [Romilus's] home, showing geographic proximity. All the acts allegedly occurred over the same period of years, and many of the acts were directly consecutive to one another, showing temporal proximity. Taken together, these factors demonstrate that [Romilus] was acting according to a common scheme or plan.

We discern no abuse of discretion in this aspect of the ruling. *See State v. Romer*, 832 N.W.2d 169, 182 (Iowa 2013) ("Two of the three events (and seven of the offenses charged) occurred at Romer's home."); *Elston*, 735 N.W.2d at 199 (stating "[a]ll of the transactions allegedly occurred in close geographic proximity within the Neffs' small home"). We also note an additional factor supporting the court's determination of a "common scheme or plan"—"[a]ll of the crimes . . . could be found to have been motivated by [a] desire to satisfy sexual desires through the victimization of children." *Elston*, 735 N.W.2d at 199.

Romilus's reliance on *State v. Cox*, 781 N.W.2d 757 (Iowa 2010), is misplaced. There, the district court severed charges involving two cousins. *Cox*, 781 N.W.2d at 759. On appeal, the Iowa Supreme Court was not faced with a severance question under rule 2.6(1) but with a question of the admissibility of prior bad acts under Iowa Rule of Criminal Procedure 5.404(b). *See id*, at 769-71. The two rules serve different purposes. *See Romer*, 832 N.W.2d at 183 (stating "an attempt to equate our evidentiary rule's principles with rule 2.6(1)'s principles is inapposite"); *State v. Lam*, 391 N.W.2d 245, 249-50 (Iowa 1986) (noting the "evidentiary rule deals with what evidence is properly admissible to prove the crime charged," whereas "the joinder of offenses rule deals with the

more basic question of what crimes can be charged and tried in a single proceeding").

*State v. Bair*, 362 N.W.2d 509 (Iowa 1985), cited by Romilus, also is inapposite. There, the district court relied on an earlier version of Iowa Rule of Criminal Procedure 2.6(1) in concluding the district court should have severed criminal counts for trial. *Bair*, 362 N.W.2d at 511. The earlier version of the rule did not contain a reference to a "common scheme or plan." *Id.* The court acknowledged the subsequent amendment "liberalize[d] and broaden[ed] charging practices so as to allow prosecutors more leeway in seeking to join multiple offenses for a single prosecution." *Id.* The court concluded the relevant conduct might have qualified as a "common scheme or plan," but it did not amount to the "same transaction or occurrence" under the then existing rule. *Id.* at 512.

Our analysis cannot end here because "[a]lthough the existence of a 'common scheme or plan' indicates the charges should be joined, the district court nonetheless had discretion to sever the charges for 'good cause.'" *Romer*, 832 N.W.2d at 183 (citing *Elston*, 735 N.W.2d at 199). To demonstrate an abuse of discretion in the court's refusal to sever the charges, Romilus had to show prejudice. *Id.*

Citing *State v. Delaney*, 526 N.W.2d 170 (Iowa Ct. App. 1994), Romilus essentially applies a prejudice analysis derived from Iowa Rule of Evidence 5.404(b). However, the court's discussion of rule 5.404(b) prejudice in *Delaney* was not in the context of the severance issue but in the context of the trial court's admission of prior bad acts evidence. *Delaney*, 526 N.W.2d at 175-76. In

*Romer*, the Iowa Supreme Court expressly rejected a rule 5.404(b) prejudice analysis in the severance context. 832 N.W.2d at 183. The court focused on the relevancy of the evidence, the fact the evidence was "legally intertwined," and the fact the court gave the jury a cautionary instruction. *Id.; but see Elston*, 735 N.W.2d at 199-200 (applying rule 5.404(b) balancing test).

The district court applied the proper prejudice test. The court stated:

> [T]he court, in its discretion, determines that the prejudice against Defendant is not enough to outweigh the judicial economy of trying the separate counts together with respect to the counts related to S.P. and S.R. The evidence of the alleged abuse is intertwined between the two victims and will necessitate the same testimony at two trials. Specifically, the abuse of S.P. and S.R. allegedly occurred sequentially and both victims were aware of the other's presence, alone, with Defendant in his room.

We discern no abuse of discretion in this aspect of the court's ruling. The court could have severed the charges involving the children. But many of the same witnesses would have testified in both trials. Additionally, the district court gave the jury a cautionary instruction as follows:

> The defendant has been charged with six counts. This is just a method for bringing each of the charges to trial. If you find the defendant guilty or not guilty on any one of the six counts, you are not to conclude the defendant is guilty or not guilty on any one of the others. You must determine whether the defendant is guilty or not guilty separately on each count.

In light of this instruction and the potential duplication of witnesses in two trials, we conclude judicial economy concerns outweighed the prejudice of having two complaining witnesses.

We recognize the outcome in the severed trial involving R.R. favored Romilus, a fact he highlights in support of his prejudice argument. However, we have no way of knowing whether Romilus was acquitted because the State

presented only one complaining witness or because the evidence against Romilus was weaker in the case involving R.R.

We turn to the jury's deadlock in the first trial involving S.P. and S.R., an outcome Romilus also cites in favor of a prejudice finding. In our view, the fact the jury was unable to find guilt even with the State's presentation of two complaining witnesses cuts against a finding of prejudice.

We conclude the district court did not abuse its discretion in denying Romilus's motion to sever the counts involving S.P. from the counts involving S.R.

### B. Expert Testimony

During the second trial, an expert witness who examined S.R. testified as follows:

> [S.R.] was anxious, but not where she was too uncomfortable to share. She was very direct, eye contact, no hesitation in her speech and how she relayed her information. So even though she was a little anxious about this process, she—her verbal skills and her ability to relate her experience were very much direct, direct eye contact. She was sure about what she was saying.

Romilus moved for a mistrial. He argued the witness impermissibly vouched for S.R.'s credibility when she stated S.R. "was sure about what she was saying." The district court denied the motion.

The Iowa Supreme Court recently revisited the permissible parameters of expert testimony in sex abuse cases. *See State v. Dudley*, 856 N.W.2d 668 (Iowa 2014); *State v. Jaquez*, 856 N.W.2d 663 (Iowa 2014); *State v. Brown*, 856 N.W.2d 685 (Iowa 2014). In *Dudley*, the court stated:

> We see no reason to overturn this well-settled Iowa law prohibiting an expert witness from commenting on the credibility of

a victim in a criminal sex abuse proceeding. Although we are committed to the liberal view on the admission of psychological evidence, we continue to hold expert testimony is not admissible merely to bolster [witness] credibility.

856 N.W.2d at 676-77. The trio of cases included an examination of various expert statements to determine whether they crossed the line. *See Jaquez*, 856 N.W.2d at 665-66; *Brown*, 856 N.W.2d at 689.

The expert's statement that S.R. was "sure about what she was saying" falls on the right side of the line. *See Dudley*, 856 N.W.2d at 678 (concluding forensic interviewer's assertion that child's statements "were consistent throughout the interview" did not cross the line into impermissible vouching); *Brown*, 856 N.W.2d at 688-89 (concluding expert's statement that child's "history is detailed and clear," child "has been consistent in what she has reported to her mother and to this examiner," and child "was clear about where the touching occurred and confidently demonstrated that" did not cross the line).

We discern no abuse of discretion in the court's ruling. Because the expert's statement did not cross the fine line between permissible testimony and impermissible vouching, we affirm the district court's denial of Romilus's mistrial motion.

**AFFIRMED.**