# IN THE COURT OF APPEALS OF IOWA

No. 19-1839
Filed June 16, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MONTRELL RYAN McCLELLAN,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Story County, James A. McGlynn,

Judge.


        A defendant appeals his convictions of assault, robbery in the first degree,

and intimidation with a dangerous weapon.  **AFFIRMED.**


        John L. Dirks of Dirks Law Firm, Ames, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.


        Considered by Bower, C.J., Greer, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**BLANE, Senior Judge.**

Montrell Ryan McClellan appeals his convictions for assault, in violation of Iowa Code sections 708.1 and 708.2(6) (2019), a simple misdemeanor; robbery in the first degree, in violation of Iowa Code sections 711.1 and 711.2, a class "B" felony; and intimidation with a dangerous weapon, in violation of Iowa Code section 708.6, a class "C" felony. He argues the district court should have granted his motion for judgment of acquittal as to all charges for lack of substantial identity evidence and challenges the lack of evidence as to the elements substantiating a robbery. He also contends the district court should have granted his motion to dismiss based on denial of speedy trial, and his motion for mistrial for unfairly prejudicial testimony and prosecutorial misconduct. We address each claim in turn and affirm.

**PROCEDURAL AND FACTUAL BACKGROUND.**

From the evidence at trial, the jury could find the following facts. Chay Potts and Aundrea Keeney were in a romantic relationship. In early March 2019, Potts paid teenager B.M. $550 for marijuana. But B.M. ripped off Potts by giving him a bag of socks and trash. Learning this, Keeney enlisted Justin Cox and McClellan to find B.M. and get Potts's money back. Keeney, Potts, Cox, and McClellan began to search for B.M. Tagging along was Cox's teenage brother, R.F. After investigating B.M.'s location through text messages and social media and searching for him at various locations in Story County, they believed B.M. was at the apartment of his girlfriend's aunt, Dawn Prewitt, in Huxley, Iowa.

In the early morning hours of March 6, they all went in one vehicle to the Prewitt's apartment complex. Keeney provided McClellan with a pistol she kept in

the vehicle. Cox had brought with him a broken BB gun. McClellan and Cox exited the vehicle, armed and with their faces covered by bandanas, and approached Prewitt's apartment. McClellan knocked on the door and when Audrey Prewitt, Dawn's daughter, opened the door, McClellan asked if B.M. was there. As Audrey replied "no" and began to close the door, McClellan drew the pistol from his waistband and pointed it at her. Audrey closed and locked the door and squatted behind it. McClellan then shot through the window three times. Bullet holes were found in Prewitt's apartment window, with bullets lodged in a living room couch, ottoman, and wall.

McClellan and Cox then fled on foot and later met up with Keeney and the others at a previously agreed-upon location. McClellan still had Keeney's pistol and told her he had fired the shots. Keeney and Cox, pursuant to a plea agreement, testified for the State against McClellan. R.F. also testified at trial and corroborated Keeney and Cox's testimony. Shelby Bierly, an acquaintance of McClellan, also testified that he had told her he had fired shots at the apartment. Other facts will be set out below as related to the particular issues.

On April 22, 2019, the State filed a trial information charging McClellan in Count I with attempt to commit murder, in violation of Iowa Code sections 707.11(1) and 707.11(2). Count II charged McClellan with robbery in the first degree, in violation of Iowa Code sections 711.1 and 711.2. And Count III charged McClellan with intimidation with a dangerous weapon, in violation of Iowa Code section 708.6.

After several continuances, jury trial commenced on August 13, 2019. The jury found McClellan guilty of the lesser offense of simple assault on Count I, in

violation of Iowa Code sections 708.1 and 708.2(6), and guilty as charged on Counts II and III.  McClellan appeals.

**DISCUSSION.**

**1. Right of Appeal and Error Preservation of Substantial Evidence Claims.**

Initially, we note the State argues that this court cannot consider McClellan's appeal of his assault conviction because Iowa law does not authorize as a matter of right review of simple misdemeanor convictions by Iowa's appellate courts.  *See* Iowa R. Crim. P. 2.73; Iowa Code § 814.6(1)(a)(1), (2)(d).  A defendant who seeks appellate review of a simple misdemeanor conviction may only obtain it by filing an application for discretionary review.  Iowa R. App. P. 6.106(2); Iowa R. Crim. P. 2.73(6); Iowa Code § 814.6(2)(d); *see also State v. Frazer*, 402 N.W.2d 446, 447 (Iowa 1987).  No such application was filed.  In addition, a notice of appeal from conviction for a simple misdemeanor must be filed within ten days of judgment. Iowa R. Crim. P. 2.73(1).  In this case, judgment was entered on October 14, 2019, and notice of appeal was not filed until November 5, 2019, after the ten-day period. For these reasons, we do not consider McClellan's appeal of his simple misdemeanor assault conviction.

As to McClellan's lack-of-substantial-evidence claim on the robbery and intimidation-with-a-dangerous-weapon charges, the State contends the issues were not preserved at trial and we should not address them.  To preserve a sufficiency-of-the-evidence challenge on appeal, it is not enough to make a motion for judgment of acquittal.  Defendants must identify in their motion the specific deficiencies in the State's evidence that would prevent the challenged count from

being submitted to the jury.  *See State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2011).  In turn, the appellate challenge must allege the lower court erred in ruling on the specific sufficiency challenge articulated in the motion for judgment of acquittal.  *State v. Geier*, 484 N.W.2d 167, 170-71 (Iowa 1992).

At trial, as to these two charges,[1] McClellan's motion for judgment of acquittal stated:

> With regard to the allegation of Count II, robbery in the first degree, the light—the evidence taken in a light most favorable to the State, as I recall it, is that this group of people were going to go find [B.M.] and that [B.M.] would be the focal point of trying to get back the $500 or $550.  I'm not conceding the State's proven that, but I believe in the light most favorable to the State, that is the—that is the version of the events the State has tried to put forth.  [B.M.] was never located.  Everybody who was asked said [B.M.] was the only one they were looking to get money from.  [B.M.] wasn't in the apartment, he wasn't seen in the apartment, nobody had any evidence that [B.M.] was in the apartment.  Under those circumstances, I think Count II must fail as well.

---

[1] The jury was instructed in order to find McClellan guilty of first-degree robbery:
   1. On or about March 6, 2019, [McClellan] had the specific intent to commit a theft.
   2. To carry out that intention or to assist him in escaping from the scene, with or without the stolen property, [McClellan]:
       a. Committed an assault upon Audrey Prewitt, or
       b. Threatened Audrey Prewitt with or purposefully put her fear of immediate serious injury.
   3. [McClellan] was armed with a dangerous weapon.
For intimidation with a dangerous weapon, the instruction required to the jury to find:
   1. [McClellan] shot or discharged a firearm at or into a building occupied by Audrey Prewitt.
   2. Audrey Prewitt actually experienced fear of serious injury and her fear was reasonable under the existing circumstances.
   3. [McClellan] shot or discharged the firearm with the specific intent to injure or cause fear or anger in Audrey Prewitt.
When a defendant does not object to the instructions given to the jury at the time of trial, the instructions "become the law of the case for the purposes of our review of the record for sufficiency of the evidence." *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).  McClellan did not object to these instructions, so they are law of the case.

Count III, intimidation with a dangerous weapon, on that one, the evidence taken—the story that's presented is that Mr. McClellan fired a weapon at a building, which people would—which he would have known was occupied if he were the one, in fact, doing the shooting because the door had been opened and immediately closed. But you have to prove that there was an intent to injure or provoke fear or anger in another person and that you're firing within a—firing at another person or an assembly of people placing the occupants in reasonable apprehension of serious injury. First round hit the wall and stopped. The second two rounds went through a window, a window you could see through. And by everybody's indications, there would have been nobody to be seen on the other side of that window. And under those circumstances, it seems to me that Count III, intimidation with a dangerous weapon, must also fail because even taken in the light most favorable to the State, there's insufficient evidence that a reasonable jury could return a verdict of guilty on that count or any other.

As can be seen, at trial McClellan raised distinct arguments. As to the robbery count, he alleged a robbery could not have occurred because there is no evidence that the theft target—B.M.—was at Prewitt's residence when the shots were fired. As to the intimidation with a dangerous weapon count, McClellan argued there is insufficient evidence he (1) possessed an intent to injure or provoke fear or anger in another person and (2) that he was firing at another person or assembly of persons placing them in reasonable apprehension of serious injury.

On appeal, McClellan now urges both verdicts are deficient because (1) there is insufficient evidence establishing his identity as the shooter and (2) that firing shots into the apartment did not further the intended theft or assist in escaping from the scene. We agree the matters raised in the motion for judgment of acquittal did not raise McClellan's identity as the shooter or the purpose for the shooting as issues for which there is insufficient evidence. Those issues on appeal were neither presented nor ruled upon by the district court and were thus not preserved for our review. *See, e.g.*, *State v. Cue*, No. 10-1795, 2013 WL 5760572, at *3

(Iowa Ct. App. Oct. 23, 2013) (not addressing merits of sufficiency claim where defendant's sufficiency challenges on appeal were being raised for the first time because they were different from those urged in the motion for judgment of acquittal at trial). Because his identity claim was not preserved, we will not consider it.

Turning to his final point on the robbery conviction, McClellan argues in order to be guilty of robbery, the State was required to prove not only that he fired the gun, but also that the assault was done in furtherance of the theft or to assist in his escape. However, he postulates since B.M. was not present, there could be no contemporaneous specific intent to commit a theft with an assault. The State urges us to find this argument is not properly preserved. But we find the court did hear this claim and ruled there is sufficient evidence of an intent to commit a theft to submit the count to the jury. So we consider the challenge on the ground preserved.

### 2. Whether there is sufficient evidence that McClellan committed the crime of robbery in the first degree.

McClellan argues that the State failed to prove the crime of robbery because there is no evidence that B.M.—the intended theft victim—was present at the location when the shots were fired.

> We review a sufficiency-of-evidence claim for correction of errors at law. The court considers all the evidence presented at trial and views the evidence in the light most favorable to the state. The verdict is supported by substantial evidence when the evidence could convince a rational trier of fact the defendant is guilty beyond a reasonable doubt.

*State v. Copenhaver*, 844 N.W.2d 442, 449 (Iowa 2014) (citations omitted). The State must prove every fact necessary to constitute the crime with which the defendant is charged. *State v. Gibbs*, 239 N.W.2d 866, 867 (Iowa 1976).

In Count II, the jury returned a general verdict finding McClellan guilty of robbery in the first degree. No interrogatories or additional questions required the jury to identify on what ground or theory it found McClellan guilty. But the parties agree proof that McClellan had the specific intent to commit a theft was required. And McClellan concedes that an assault took place. But he argues the assault was not in furtherance of an intended theft and, therefore, did not constitute one of the necessary elements of robbery

The jury was instructed "theft" means "taking possession or control of property that belongs to another with the intent to permanently deprive that person of that property." And "specific intent" means "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind." We note that "[i]t is peculiarly the province of the jury to pass upon questions of fact." *State v. Lowenberg*, 243 N.W.2d 538, 541 (Iowa 1932). "[T]he jury is free to believe or disbelieve the testimony of the witnesses and to give as much weight to the evidence as, in its judgment, such evidence should receive." *State v. Hunt*, 801 N.W.2d 366, 377 (Iowa Ct. App. 2011). The statute requires that the assault, threat or placing in fear must be "to assist or further the commission of the *intended* theft." Iowa Code § 711.1 (emphasis added).

At trial, the jury heard testimony that McClellan, Keeney, and Cox teamed up to get back the money B.M. deceptively obtained from Potts. They used cell phones and social media to track B.M. across Story County. Finally, they heard

he was at his girlfriend's aunt's apartment[2], that being Prewitt's apartment in Huxley. They planned a meeting place for after the encounter. They approached the apartment armed, their faces covered with bandanas. They knocked on Prewitt's apartment door, and when Audrey Prewitt answered the door, she was asked "where's [B.M.]" or "if [B.M.] was there." Audrey responded "no" as McClellan drew a gun from his waistband and pointed it at her.[3] She closed the door, locked it, and squatted down on the floor. McClellan then fired shots into the apartment and fled.

There is substantial evidence that McClellan had the specific intent to commit a theft when he approached the apartment. In a robbery, it is immaterial whether the defendant actually came away with any property or not. Iowa Code § 711.1(2) ("It is immaterial to the question of guilt or innocence of robbery that property was or was not actually taken."). McClellan's purpose in traveling with Keeney and Cox that night was to retrieve the money from B.M. And from the steps taken to find B.M. and recoup the money, including obtaining a pistol and concealing his identity, a reasonable jury could have concluded beyond a reasonable doubt that his intended purpose in doing so was to deprive B.M. of that property—i.e., commit a theft.

A reasonable jury also could conclude that it did not matter whether B.M. was there because they also found an assault[4] occurred while McClellan had the

---

[2] Audrey testified that her teenage cousin was B.M.'s girlfriend. The night of these events, Audrey testified she had been out with friends, including her cousin.

[3] Dawn and Audrey Prewitt testified as to who lived in the apartment and who was there that night. B.M. was not present in their apartment.

[4] The jury instruction as to Count II defined assault as: "1. On or about March 6, 2019, Montrell Ryan McClellan did an act which was intended to place Audrey

intent to commit a theft. McClellan focuses on the firing of the three shots into the apartment as the assault. He argues that because the shots occurred after Audrey had responded that B.M. was not in the apartment and had closed and locked the door, there was no longer any intent to commit the theft from B.M., and therefore, the shots were not in furtherance of the intended theft. But this ignores the evidence that when Audrey opened the door and was confronted by McClellan and Cox, as she was answering the inquiry whether B.M. was there, McClellan drew the pistol from his waistband and pointed it at her. This happened at the same time as she was answering the question and before she was able to close and lock the door. Under the jury instruction, the jury could find this evidence established beyond a reasonable doubt that McClellan committed this assault while he had the intent to commit the theft from B.M. as he was informed that B.M. was not present at the time he was pointing the pistol at Audrey.

On appeal, McClellan argues that the evidence shows he did not know B.M.'s location so he could not have had the specific intent to steal from him at the time. Some testimony was given that B.M.'s known vehicle was not in the apartment complex parking lot so they did not expect B.M. to be there. And some other testimony suggested the purpose of the shots was to scare B.M. rather than assault him. But the jury was free to believe the version of events it considered more credible. And, a rational jury could infer that these claims are inconsistent with McClellan's acts at the time of preparing for a violent confrontation by arming

Prewitt in fear of immediate physical contact which would be painful, injurious, insulting or offensive to her." And "2. Montrell Ryan McClellan had the apparent ability to do the act."

himself, donning a face covering, and planning a meeting spot for afterward. The jury could also infer these claims were inconsistent with McClellan's knocking on the door and asking if B.M. was in the apartment. Finally, when Audrey said no, McClellan did not simply retreat from the apartment and continue his search; he pointed his gun at Audrey and fired shots into the apartment. All of this testimony would allow a reasonable jury to conclude that McClellan approached the apartment expecting to confront B.M. with the "specific purpose in mind" of "taking possession or control of" the money B.M. obtained from Potts.[5] Viewed in the light most favorable to the verdict, and making all reasonable inferences available in its favor, we conclude substantial evidence supports the conviction for robbery. We affirm the conviction.

### 3. Whether there was a violation of McClellan's right to speedy trial and his motion to dismiss should have been granted.

Rulings on denials of motions to dismiss are reviewed for abuse of discretion. *State v. Taylor*, 881 N.W.2d 72, 76 (Iowa 2016). "When speedy trial grounds are at issue, however, the discretion given to the district court narrows." *Id.*

Iowa Rule of Criminal Procedure 2.33(2)(b) provides:

If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

---

[5] McClellan does not raise this as a deficiency in the conviction but we note here that Iowa Code provides, "A person commits theft when the person . . . [e]xercises control over stolen property, knowing such property to have been stolen, . . . *unless the person's purpose is to promptly restore it to the owner or to deliver it to an appropriate public officer*." Iowa Code § 714.1(4) (emphasis added).

Dismissal is required unless the State proves (1) that the defendant waived the right to speedy trial; (2) that the delay is attributable to the defendant; or (3) that there is "good cause" for the delay. The burden of showing that an exception applies rests squarely with the State. *Taylor*, 881 N.W.2d at 76. "In determining whether there is good cause for a delay, we focus only on one factor, the reason for the delay." *State v. Campbell*, 714 N.W.2d 622, 627–28 (Iowa 2006). When the State satisfies its burden to show one of these exceptions applies, the State is not prohibited from extending the prosecution. *State v. Miller*, 311 N.W.2d 81, 83 (Iowa 1981).

The trial information was filed on April 22, 2019, establishing a ninety-day trial deadline of July 21, 2019. McClellan did not waive speedy trial, and on May 13, the court entered an order setting trial for June 18. On May 14, McClellan's court-appointed counsel informed the court of McClellan's intention to plead guilty and requested a plea hearing. The court scheduled the plea hearing for June 3.[6] On May 31, the State filed the notice of plea agreement setting out the terms of the agreement. Before the hearing, McClellan filed two letters with the court complaining that his attorney was attempting to force him to plead guilty and requesting a new attorney. At the plea hearing on the record, McClellan vacillated about pleading guilty, finally indicated he did not want to plead guilty, and requested new counsel. The court granted the motion, appointed new counsel, and established a new ninety-day trial deadline of September 2. But the newly

---

[6] In the May 13 order setting trial for June 18, the court also scheduled a pre-trial conference for June 3.

appointed attorney determined he had a conflict and filed a motion to withdraw on June 4.

On June 5, the court deferred ruling on the conflict and directed the new attorney to consult with McClellan about waiver of the conflict. On June 21, the attorney filed a second motion to withdraw, more specifically identifying the conflict. On June 26, the court entered an order granting the second attorney's withdrawal and appointing a third attorney to represent McClellan. Trial was rescheduled for July 23. On July 4, McClellan's newly appointed attorney filed a motion to continue the July 23 trial, citing the need for additional time to prepare for trial and suggesting a new trial date of August 13. On July 5, the court granted the defense motion to continue and ordered the trial continued to August 13. On August 9, McClellan's attorney filed a motion to dismiss based on failure to commence trial within the ninety-day speedy trial requirement.

The court held a hearing on the motion to dismiss on August 12, and that same day filed a thorough, five-page ruling outlining the basis for the delay and denying the motion. The court found that McClellan never waived his right to a speedy trial, but that the delay was attributable to him. The court also found that the trial date of August 13, was within the ninety-day period established by the June 3 order. Trial commenced on August 13. We find the trial court properly applied the law, that the trial was continued at McClellan's attorney's request, and the court did not abuse its discretion in denying the motion to dismiss.

4. **Whether the district court abused its discretion in denying McClellan's motion for mistrial.[7]**

We review the district court's ruling on motions for mistrial for an abuse of discretion. *See State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). "[W]e only reverse if the district court's decision rested on grounds or reasoning that were clearly untenable or clearly unreasonable." *Id.* "Grounds or reasons are untenable if they are 'based on an erroneous application of the law or not supported by substantial evidence.'" *Id.* (quoting *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014)).

During the State's case, the prosecution called Division of Criminal Investigations (DCI) Agent Elizabeth Miller as a witness. During her examination by the prosecutor, the following question and answer took place:

> Q: Agent Miller, during the course of your investigation, did you run into a number of inconsistent statements or varying details from various sources? A: Yes, I did. Inconsistent statements are very normal in investigations. However the—throughout the investigation, the consistency was the players that were involved and that Montrell was the shooter.

Defense counsel objected and moved for a mistrial urging that the statement had rendered an opinion as to the defendant's guilt. The district court overruled the opinion objection and denied the motion for mistrial. However, the court sustained an objection that the answer was nonresponsive, admonished the witness, gave a

---

[7] In his appeal brief, McClellan's counsel also argues prosecutorial misconduct and a violation of defendant's constitutional right to a fair trial. On our review of the record, we find neither of these objections were lodged during the trial nor ruled on by the district court. We find they were not preserved and may not be considered in this appeal. *See State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020) (holding due process right to fair trial issue not preserved where the matter was not raised by discussion or motion, and the record does not indicate the court considered it).

curative instruction to the jury that restated their role, and told the jury to disregard the challenged statement.

Our supreme court addressed how we evaluate whether the district court abused its discretion by striking the answer and giving the jury a cautionary instruction rather than granting a mistrial.

> Because the evidence was inadmissible, we must determine whether the court abused its discretion by granting a cautionary limiting instruction rather than a mistrial. Generally, a district court's decision not to grant a mistrial but to offer a cautionary instruction instead is entitled to broad deference. Cautionary instructions are sufficient to mitigate the prejudicial impact of inadmissible evidence "in all but the most extreme cases."
>
> In *State v. Belieu*, we identified several important considerations for determining whether a cautionary instruction can adequately mitigate the prejudicial impact of inadmissible evidence. 288 N.W.2d 895, 901 (Iowa 1980). The first *Belieu* consideration is whether the "defendant [can] combat the evidence without compounding the prejudice." The second consideration is how extensive the evidence is and the promptness with which it was addressed. Finally, we assess prejudice—the stronger the State's evidence of . . . guilt is, the less prejudicial the effect of the challenged testimony.

*Plain*, 898 N.W.2d at 815 (citations omitted). In applying the three considerations outlined in *Belieu,* we find McClellan could combat the offending proffered evidence without compounding the prejudice, the issue was promptly addressed, and that McClellan was not prejudiced by the offending answer. The State's evidence against McClellan was strong. The district court did not abuse its discretion in choosing the path of sustaining the objection, striking the offending answer and giving a curative instruction to the jury rather than granting defense's motion for mistrial.

**CONCLUSION.**

Based upon our analysis of the issues preserved and raised, we find the convictions should be affirmed.

**AFFIRMED.**